# Daltry *v.* Media Electric Light, Heat and Power Company, Appellant.

*Negligence—Electric light company—Degree of care.*

A corporation which uses electricity of high voltage for lighting purposes is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid an injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them.

An electric light company is responsible for an injury where it negligently permits its wire to come in contact with the wire of another, which transmits the current, and thereby causes an accident.

In an action against an electric light company to recover damages for injuries to a boy ten years old, it appeared that the boy was injured by coming in contact with the end of a broken wire while at play. The evidence showed that the accident occurred on a lawn to which there was access from a public street by a driveway, and that the only obstruction to the entrance of the driveway was a chain hanging between posts. It was customary for the boys of the neighborhood about the time of the accident, and when the house on the property was not occupied, to play on the lawn, and at times the owner permitted the boys to enter to get apples. The fact that boys played on the lawn was known to the defend-

208    403
f208    414
208    403
e 33 SC  ¹585

208    403
f221    ¹616

208    403
38SC     7

ant. Sometime prior to the accident a tenant of the property at his own expense had the defendant introduce electric light into the house by running a wire from its line at the gateway across the lawn to the building. When the tenant removed from the house the company cut off the electric connection by taking out the fuses at the transformer beneath the eaves of the house. The wire continued in connection with the feeder line at the street. At the time of the accident it hung a few feet from the driveway, and not far from the entrance. It extended to a point within twelve or eighteen inches of the ground, and was of sufficient length to swing to the driveway. The boy while at play came in contact with the end of the wire. *Held*, (1) that the company was not relieved from liability to the boy by reason of the fact that it was not the owner of the wire; (2) that the company was not relieved from liability on the theory that the boy was a trespasser on the lawn at the time of the accident; (3) that the use of the wire by the company was sufficient to warrant an averment in the statement of claim that "it negligently conducted its said business and operated and controlled its wires;" (4) that a verdict and judgment for plaintiff should be sustained.

Argued Feb. 9, 1904. Appeal, No. 225, Jan. T., 1903, by defendant, from judgment of C. P. Delaware Co., Sept. T., 1901, No. 106, on verdict for plaintiff in case of James W. Daltry by his next friend John L. Daltry and John L. Daltry v. Media Electric Light, Heat & Power Company. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and THOMPSON, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before JOHNSON, P. J.

The facts are stated in the opinion of the Supreme Court.

Defendant presented these points:

7. If James Daltry in the exercise of that discretion which is reasonably expected from a boy of his age, size, maturity and capacity should have known that if he came in contact with this wire, he would be hurt, then he cannot recover and the verdict must be for the defendant. *Answer :* In answer to this point we say if you find the boy had sufficient intelligence, capacity and understanding to know that if he came in contact with the wire, he would be hurt, and did purposely, carelessly or negligently touch it, this point is affirmed. [13]

8. If James Daltry played with this wire when an ordinarily careful and prudent boy of the same age, capacity and intelligence would have stayed away from it, then there can be no recovery in either case. *Answer :* This point is affirmed, if

you shall find that James had sufficient intelligence, capacity and understanding to know he would be hurt if he touched the wire. [14]

10. If James Daltry was trespassing on the private property of George E. Darlington, Esq., at the time he received the electric shock, which caused his injury, he was at a place where he had no right to be, and at a place where the defendant owed him no duty and cannot recover and the verdict in each case must be for the defendant. *Answer :* We say if you find that James was a trespasser and was where he had no right to be and at a place where the defendant owed him no duty, then this point is affirmed. [15]

11. If James Daltry was injured while playing on the lawn of George E. Darlington, Esq., he was a trespasser there ; the defendant owed him no duty and the verdict in each case must be for the defendant. *Answer :* That is refused. [16]

12. Under all the circumstances of the case, the defendant owed the plaintiff no duty which was violated, hence there is no legal liability, and the verdict must be for the defendant. *Answer :* This is refused. [17]

13. The defendant could not refuse to furnish current to the property of George. E. Darlington, Esq., and could not refuse to permit Walter D. Griscom, a consumer, to connect his private wires to the main line of the defendant for the purpose of getting current to light said property ; but the defendant is not liable for an injury happening from those private wires of the consumer. *Answer :* That is refused. [18]

14. If the wire from which James Daltry received an electric shock did not, at the time of the injury, belong to the defendant, then the defendant is under no obligation to keep it in repair, and is not liable to the plaintiffs, and the verdict must be for the defendant in both cases. *Answer :* This is refused. [19]

15. If the wire from which James Daltry received an electric shock was furnished, bought, put up, erected and paid for by Walter D. Griscom, a tenant on the property of George E. Darlington, then the defendant is under no obligation to keep it in repair and is not liable to the plaintiffs for the injury complained of and the verdict in each case must be for the defendant. *Answer :* That is refused. [20]

Verdict and judgment for James W. Daltry for $5,500 and for John L. Daltry for $400. Defendant appealed.

*Errors assigned* among others were (13–20) above instructions, quoting them.

*W. Roger Fronefield*, for appellant.—An electric lighting company does not owe a duty to a trespasser on the private property of a consumer of its current to inspect and keep repaired the private wiring of the consumer: Gramlich v. Wurst, 86 Pa. 74; Gaughan v. Philadelphia, 119 Pa. 503; Herr v. Lebanon, 149 Pa. 222; Elliott v. Allegheny County Light Company, 204 Pa. 568.

It is conceded that the boy was a trespasser, in which case, to permit of recovery, wanton or intentional injury must be proven : Brown on Negligence in Penna. 1708; 13 Pepper & Lewis Digest of Decisions, 21,621; Knight v. Abert, 6 Pa. 472; Gillis v. Penna. Railroad Co., 59 Pa. 129; Gramlich v. Wurst, 86 Pa. 74; Duff v. Allegheny Valley R. R. Co., 91 Pa. 458; Gillespie v. McGowan, 100 Pa. 144; B. & O. R. R. Co. v. Schwindling, 101 Pa. 258; Rodgers v. Lees, 140 Pa. 475; Brague v. Northern Cent. Ry. Co., 192 Pa. 242; Mulherrin v. Delaware, etc., Railroad Co., 81 Pa. 366; Westerberg v. Kinzua Creek R. R. Co., 142 Pa. 471.

A trespasser cannot recover even though the danger was not apparent to him : Gillis v. Penna. R. R. Co., 59 Pa. 129 ; Feehan v. Dobson, 10 Pa. Superior Ct. 6 ; Gramlich v. Wurst, 86 Pa. 74.

Even though the plaintiff had not been technically a trespasser, still he was at a place where he had no right to be and where the defendant owed him no duty: Gillis v. Penna. R. R. Co., 59 Pa. 129; Duff v. Allegheny Valley R. R. Co., 91 Pa. 458; Gillespie v. McGowan, 100 Pa. 144.

. Allegations and proofs should agree. The burden is on the plaintiff to prove his case of negligence against the defendant as he alleges it, and " that the defendant caused a wire owned and operated by the defendant to strike the plaintiff : " Gilberton Borough v. Schuylkill Traction Co., 22 Pa. Superior Ct. 279 ; Lee v. Conard, 1 Whart. 155.

The court, both in the general charge and in the answer to

the defendant's points made the plaintiff's knowledge the test of his responsibility. In this, we submit, the learned judge erred: City Pass. Ry. v. Hassard, 75 Pa. 367; Penna. R. R. Co. v. Kelly, 31 Pa. 372; Rauch v. Lloyd, 31 Pa. 358; Penna. R. R. Co. v. Lewis, 79 Pa. 33; Crissey v. Hestonville, etc., Ry. Co., 75 Pa. 83; Smith v. O'Connor, 48 Pa. 218; Oakland Ry. Co. v. Fielding, 48 Pa. 320; Sandford v. Hestonville, etc., R. R. Co., 136 Pa. 84; Moore v. Penna. R. R. Co., 99 Pa. 301; Kehler v. Schwenk, 144 Pa. 348.

*W. B. Broomall*, with him *John E. McDonough*, for appellee. —The question of trespassers had nothing to do with the case. We could not affect the defendant company, by proving that they were transmitting their current over the owner's property as a matter of technical trespass, nor does it stand the defendant in hand to affect the boy, by proving that so far as the owner of the property was concerned, he was a technical trespasser: Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540.

OPINION BY MR. JUSTICE MESTREZAT, March 14, 1904:

George E. Darlington, Esq., is the owner of a lot or piece of ground fronting about 100 yards on Providence avenue, in the borough of Media, Delaware county. In the center of the lot, about 150 feet from the street, stands a large dwelling used as a country house, and in the rear of it is a stable. A hedge fence separates the land from the street. Midway of this fence a driveway enters the premises, leading to the house and thence to the stable. On either side of the driveway, at the entrance to the property, is a stone gate post, and a chain hanging between the posts is the only obstruction to entering through the gateway. There is a lawn in front of the dwelling house on which the children of the neighborhood occasionally play, and when Mr. Darlington occupied the house he permitted them to enter the premises occasionally to get apples. At the time of the accident the premises were vacant.

The defendant company furnishes light, heat and power to consumers in the borough of Media. Its light wires extend along Providence avenue in front of the Darlington premises.

This property was leased to W. D. Griscom who, in March, 1898, had the defendant company introduce electric light into the house by running a wire from its line at the gateway across the lawn to the building. This was done at the tenant's expense. Griscom removed from and vacated the premises, and just prior to doing so he directed the defendant company to cut the current so it would not pass through the house. This was done by taking out the fuses at the transformer which rested against the side, and just beneath the eaves, of the house. The electric current was thus prevented from entering the house but not from passing through the wire extending from the house to the defendant's feed line at the street. After the current had been cut out, the wire broke between the house and a tree on the lawn through which it passed and was tied to the branches of the tree. The broken end of the wire fell frequently and " was tied up in the tree out of reach, four or five times before this injury." At the time of the accident it hung from the tree fourteen feet from the hedge fence and six feet from the carriageway. It extended to a point within twelve or eighteen inches of the ground and was of sufficient length to swing to the driveway.

In the immediate vicinity of the Darlington property, the plaintiff, a boy of ten years of age, and a number of other children of like age resided in 1901. They were accustomed to play in the street near the gateway after school hours. The plaintiff with another boy, a few years his senior, were thus engaged in the street in front of the Darlington premises in the afternoon of April 9, 1901. They separated to go to their homes for supper and agreed to meet later " down at the Darlington gate to play hide and seek or hunt the hare." A half hour later the two boys with several other boys of their age assembled inside the gate where the broken wire was suspended and engaged in " skinning the cat and playing around." The plaintiff came in contact with the wire and was severely injured. Paul Matheus, one of the boys, after testifying that they had been playing with the wire and that it " was bare at the end," thus describes the manner in which the accident occurred: " Q. What happened when James (plaintiff) came ? A. I threw the stick and when the stick lit on the wire it kind of moved over toward me and then back again, and it flew off and he went to

grab the stick and grabbed the bare wire. He got hold of the wire and fell down." The brother of this witness gives the same account of the accident. He testifies: " Q. Tell us as well as you recollect what happened after Jimmy (plaintiff) got in there. When you first saw him when he got in there, what happened. A. Paul threw a stick and he grabbed hold of the stick. The stick swung after it had hit the wire and caught in the wire somehow, and he went to grab for the stick and grabbed the wire and he groaned a little and fell right back."

This action was brought to recover damages for the injuries sustained by the plaintiff alleged to have been caused by the negligence of the defendant company. The case was submitted to the jury and a verdict was rendered in favor of the plaintiff. The learned trial judge refused to grant a new trial for the reasons set forth in his opinion and, judgment having been entered on the verdict, the defendant has appealed.

Electricity when of sufficient voltage for lighting purposes is well known by electricians and others familiar with its properties to be most dangerous and likely to cause death to those who come in contact with its current. Those who deal with it or supply it to the public are therefore required to recognize this fact and to exercise care commensurate with the danger. A party responsible for an injury by reason of a failure to observe such care is guilty of negligence. As said in Fitzgerald v. Edison Electric Company, 200 Pa. 540: " The company, however, which uses such a dangerous agent is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidently or otherwise in contact with them. The defendant, in accord with the common practice of electric companies, recognized this obligation by insulating its dangerous wire."

The defendant seeks to relieve itself from liability for the injuries sustained by the plaintiff substantially on the ground that the company was not the owner of the wire which occasioned the injuries and because the plaintiff was a trespasser at the time of the accident and therefore it owed him no duty requiring the observance of care to guard his safety. We are of opinion, however, that under the facts of this case neither of these defenses can avail the defendant company.

While the expense of constructing the electric light line from the defendant's wire to the house was paid by the tenant of the premises, the work was done by the defendant company which also cut off the current from the house before the accident. It used the line to carry its current to the house until the connection was severed, and during this time it had full control of the wire and, as it were, operated it in furnishing electricity for the building occupied by the tenant. After the defendant company had removed the fuses from the wire at the house, it, nevertheless, continued to send its electric current through the wire whenever its dynamo was in operation, although the current was not utilized for lighting purposes. The wire carried the same deadly element or agent across the lawn after, as it did before, the current was disconnected at the house, and a like responsibility rested with the defendant company to exercise care in protecting those who might come in contact with it by accident or otherwise, and through no fault of their own. The company could have severed the wire and the current at its own feed wire at the street, and thereby have removed all danger to persons who might possibly come in contact with it on the Darlington premises. No sufficient reason is assigned why the defendant did not take this reasonable precaution to avoid a patent danger as well as to relieve itself from responsibility for a wire, the ownership and control of which it disclaimed.

That the company did not construct the line at its own expense cannot relieve it from the duty to exercise care in keeping it in proper condition and repair during the period the wire carried its electric current. The ownership of the wire cannot affect the company's liability for failure to observe this duty under the facts disclosed by the evidence in this case. When charged with its electricity the wire was in the possession and control of the company so far as concerned its duty to keep it in repair and in proper condition and position to protect those who might come in contact with it. The danger lay not in the wire, but in the "subtle fluid" sent through it by the defendant company. It was not the wire that injured the boy, but the electric current which it bore from the defendant's dynamo. The use of the wire by the defendant, and not the wire itself, caused the injury to the child. Hence, it logically follows

that, not withstanding the ownership of the wire may have been in another, the defendant company must be considered as in possession of, and as using, it at the time of the accident and, therefore, responsible for any injury resulting from the failure to inspect and keep it in proper condition and repair when charged with the company's electricity.

That the ownership of the wire is not controlling as to the liability for an injury caused by coming in contact with it is determined by the principle announced in that class of cases in which it is held that an electric railway company or an electric light company is responsible for an injury where it negligently permits its wire to come in contact with another company's telephone or telegraph wire which transmits the current and thereby causes an accident. This is a sound rule and is recognized in many jurisdictions: Block v. Milwaukee Street Railway Co. (Wis.), 27 L. R. A. 365; City Electric Street Railway Company v. Conery (Ark.), 31 L. R. A. 570 ; Western Union Telegraph Co. v. Nelson (Md.), 31 L. R. A. 572; United Electric Ry. Co. v. Shelton, 89 Tenn. 423. These cases hold it to be the duty of electric companies to use care not only to keep their own wires in proper condition and repair, but also to prevent their coming in contact with other wires which, by becoming charged with and transmitting the electric current, may cause an injury. When an injury results under such circumstances the electric company is responsible by reason of the negligent control of its wires regardless of the ownership of the wire that transmits the current to the person who is injured. In the case at bar, the electric current was not transmitted by the company's wire coming in contact with another wire which caused the plaintiff's injury, but it was carried on a wire connected by the company with its own feed wire for the very purpose of transmitting the current which by reason of the noninsulation of the wire injured the boy. With much greater reason, therefore, should the defendant company in this case, under like circumstances, be held liable for the transmission of its current through another's wire, than where the electric company's current is communicated to the wire by negligent contact.

The defendant company also denies its liability because, as it alleges, the plaintiff was a trespasser at the time of the acci-

dent and it owed him no duty which it had violated. But this position is clearly untenable. If it be conceded that the boy was technically a trespasser as against Mr. Darlington who owned, and was in possession of, the premises, he was not a trespasser as against the defendant company who had neither the possession, nor the right of possession, of the property. It may be admitted that the company entered the premises by permission, but it was for the specific and single purpose of furnishing light to the then tenant of the property. When he directed the cutting out of the current and the discontinuance of the light in his house, the purpose of the entry had been accomplished and the right of the company to be upon the property had ceased. It is not claimed that the company was on the premises or was using the wire with permission of Mr. Darlington at the time of the accident. If, therefore, it was occupying the property for any purpose whatever, it was itself a trespasser. It stood on no higher ground than the plaintiff, whose presence on the lawn was violating no right of possession which the company had to the premises. Conceding that the owner of the property owed no duty of care to either, the parties themselves, however, occupied the same relative position towards him, but an entirely different position towards each other which required that each should exercise towards the other the care demanded by the circumstances.

Assuming then, as we must assume, that the defendant company was in possession of, and using, the wire for the purpose of transmitting its electric current, and that as against it the boy was not a trespasser, its duty to the children at the place and time of the accident was to exercise such care over the wire as was demanded by the great danger to which they were exposed. Having constructed the line across the lawn to the house in proximity to the carriageway, it knew that children as well as adults might frequent the way and, hence, the necessity for keeping its wires in proper condition and repair to avoid danger. It must be presumed that the company also knew what the evidence disclosed as a fact that children used the lawn of the premises near the gateway and in the vicinity of the wire as well as the street in front of the premises as a playground. Such conditions existed for a sufficient length of time to warrant the inference of notice to the company.

The accident occurred very near the gateway—but two steps from the driveway and only about fourteen feet from the fence. So far as pedestrians were concerned, there was practically no obstruction to entering the driveway which was the approach to the house. It was, therefore, the duty of the company in transmitting its current on the premises to take reasonable precautions to prevent injury to persons who might be at this point. Whether it observed this duty or not was clearly for the jury.

Under all the facts of the case, we are of opinion that it was the duty of the defendant company to properly inspect and keep in repair the electric wire that carried its current across Mr. Darlington's premises, and that for an injury resulting from a failure to perform this duty, the company is legally responsible.

We are not convinced that the assignments raising the other questions in the case are of sufficient merit to warrant reversal. Some of those questions are considered and properly disposed of in the opinion of the learned trial judge in overruling the motion for a new trial. The use of the wire by the company for the transmission of its current was sufficient to warrant the averment in the statement that " it negligently conducted its said business and operated and controlled its wires." Several months prior to the accident, the tenant had removed from the premises, leaving the wire suspended between the street and the house as the company had constructed it. So far as the evidence disclosed, he had at no time exercised any acts of ownership over it. From the time of the construction of the line till the accident, the defendant company was the only party that made any use of the wire. It may, therefore, as laid in the statement, fairly be regarded as the company's wire.

There was some evidence of the diminished earning power of the boy and it had to go to the jury on the question of damages. We also think that the jury would understand from all the language used by the trial judge on the subject in the charge and in answer to points, that the test of the boy's responsibility for negligence was the discretion usually exercised by children of his age, maturity and capacity. If he exercised such discretion he is not chargeable with negligence. There is

some ground for the allegation of inadequacy of the charge as recognized by the trial judge himself, but as a whole, we are not prepared to say that the charge did not give the jury instructions sufficient to enable it to apply the correct rule in ascertaining the damages and in determining the negligence of the defendant.

The judgment is affirmed.