# Zinkiewicz *v.* Citizens' Electric & Illuminating Company, Appellant.

*Negligence—Electric light companies—Broken wire in highway—Pedestrian—Notice.*

1. In an action against an electric light company to recover damages for personal injuries to a pedestrian, caused by contact with a broken wire in a highway, an averment in the statement that the defendant had permitted its wire to be for a long time prior to the injury in a broken and defective condition in and along the highway, is borne out by proof properly admitted that if the plant of the defendant company had been equipped with the necessary devices, commonly known and in general use, those in charge of the plant would have had immediate

notice of the breaking of the wire, and could at once have turned off the current.

2. In such a case it is no defense to show that the defendant had been paid by some customer to put up the wire in question, and that the customer had agreed to notify the company in case a dangerous condition should arise.

Argued March 4, 1913. Appeal, No. 15, March T., 1913, by defendant, from judgment of C. P. Luzerne Co., Feb. Term, 1909, No. 159, on verdict for plaintiff in case of Victoria Zinkiewicz v. Citizens' Electric and Illuminating Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial the jury returned a verdict for plaintiff for $1,000.

On a motion for judgment for defendant n. o. v. FULLER, J., filed the following opinion:

This action was brought for personal injuries inflicted upon the plaintiff by contact with a live electric wire which had become broken and by the alleged negligence of defendant was left dangerously hanging down upon the road where she walked.

There was sufficient evidence to establish, (1) that the wire had remained in the broken condition during a period of about four hours, (2) that the defendant would have been immediately apprised of the break if a proper apparatus had been installed at its station, (3) that the wire was charged with an alternating current of 2,200 volts, (4) that the plaintiff walking on the road where the wire hung came in contact with the wire, thus receiving a painful and injurious shock.

The case was submitted to the jury with instructions to determine whether the defendant was negligent in failing to discover and remove the danger during the period of four hours before the accident, and whether the plaintiff herself was guilty of contributory negligence,

The jury rendered a verdict in favor of the plaintiff for $1,000, and this result is now attacked on the motion for judgment non obstante veredicto, on two grounds, first, that the plaintiff failed to prove negligence as averred or any negligence at all, and, second, was herself guilty of contributory negligence.

(1) The statement avers on the point of negligence that the plaintiff "came inadvertently in contact with a defective, broken or sagged, uninsulated and highly charged live electric light wire, owned and controlled by said defendant, who negligently permitted the same to be and remain for a long space of time in a highly dangerous condition in, over and along the said highway; . . . . that it was the duty of said defendant to use a high degree of care, caution and skill in the management and conduct of said business and in conducting and maintaining its poles, wires and all other necessary machinery and apparatus connected with its plant, in a safe condition, and to keep the same so by sufficient and timely inspection so that plaintiff and all others having occasion to pass along the said highway might not be injured in that behalf; . . . . that the defendant did not use proper care and skill in constructing and maintaining its poles, wires and other apparatus in a safe condition, but on the contrary negligently constructed and adjusted its wires on its poles and for a long time previous to and up to the time of the injury heretofore stated, negligently permitted its wires to be in a sagged, broken or defective condition down, in and along the highway, etc., and it also failed to maintain inspection of said wire at said place, and because of its neglect in these respects the said plaintiff suffered," etc.

This perhaps displays a lack of precision, and was not sustained in all respects by the evidence, but we think that taken as a whole it would be sustained by proof of a broken wire hanging down upon the road during a period of time sufficient to affect the defendant with constructive notice of its condition.

The measure of defendant's responsibility is defined in Fitzgerald v. Edison Electric Illuminating Company, 200 Pa. 540, as follows:

"The company, however, which uses such a dangerous agent, a wire charged with an electric current, is bound not only to know the extent of the danger but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them," which was approved in later cases.

We need not cite authorities for the proposition that in view of the extraordinary care which such companies are bound to exercise they would be responsible for the consequences of permitting a live wire to dangle upon the road after notice, actual or constructive, regardless of the causes producing such a condition.

In light of the legal propositions which govern the case, and of the testimony respecting duration of the break and available apparatus for quick discovery, we could not well withdraw this case from the jury.

It is true that the lack of proper apparatus for such purpose was not specified perhaps, but in the absence of any demand for a bill of particulars, we think it may be implied in the general averment of negligence in permitting the wire to be for a long time in a broken condition.

It was for the jury to say whether four hours constituted a period long enough to impute knowledge of the break under all the circumstances, and among those circumstances, though not specifically averred, would be the existence of an apparatus for speedy discovery.

We must refer to our charge for further vindication of our refusal to give binding instructions on the question of defendant's negligence. The manner of submission may have been inadequate, but no objection for that reason was alleged when exception was taken to the charge, as required by Act of May 11, 1911, P. L. 279, nor has any such objection been urged since, and therefore we

need go no further at this time than to decide in the affirmative the propriety of submitting the case at all.

(2) We will also refer to our charge for vindication of refusal to give binding instructions on the question of plaintiff's contributory negligence.

The subject was submitted to the jury thus: "Was she guilty of contributory negligence? If so she cannot recover. If as she testified she saw the wire down at 6:30 A. M. and knew that it carried electricity to run the mill, ought she to have known its danger, and ought she, in the exercise of ordinary prudence, under the circumstances, to have watched the little boy or held him by the hand as they passed the place of danger, and was she herself negligent in permitting him to walk behind, unwatched and unprotected? If she knew that the broken wire carried a dangerous current you might find in her behavior the absence of such ordinary, reasonable care as people are bound to take of themselves, but there is no proof nor presumption that she knew this, for wires charged with electricity may be harmless or they may be dangerous, and the difference is not apparent to ordinary ocular observation. Furthermore, the day was Sunday, when the mill was not in operation. She was carrying a baby in her arms, as she had a right to do. Considering all the circumstances, can you say that she was guilty of negligence which was a contributing cause of the accident, that by the exercise of ordinary care she might have avoided the accident? If you can and do so find as reasonable men, your verdict should be for the defendant."

This woman, of course, knew in a general way perhaps that the wire which she saw broken at an early hour in the morning was used to carry electricity for the machinery of the mill, and that electricity is dangerous to human welfare, but we could not without the aid of the jury convict her of knowing that the wire was still broken four hours later, or that it carried a dangerous current at that particular time, on Sunday, when the mill was not in operation, nor can we pronounce her conduct in traveling

her accustomed road with her little children contributory negligence per se, which should bar recovery.

It was a proper question for the jury, properly submitted.

The motion for judgment non obstante veredicto is denied.

The verdict is also attacked on the motion for a new trial on the ground of certain alleged errors in the admission and rejection of evidence; (1) in permitting the witness Hart to give testimony in relation to the purpose and function of a continuous ground detector, and the effect of such an appliance if installed in the defendant's plant or power house, respecting the giving of notice in case of a break of one of defendant's wires, the said witness having admitted before so testifying that he had no knowledge or experience in the use and operation of what is known as a "continuous ground detector;" (2) in excluding the evidence offered by defendant to show that the wires which were connected with the mill of the Wyoming Valley Lumber Company were erected, paid for and continuously controlled and maintained by the said lumber company, and that in consequence thereof the said lumber company took it upon itself to watch and guard said wires in case the same got out of order and repair, and this for the purpose of relieving the defendant company from liability in the event that said wires and poles would get out of order and require repairs.

The admission of Hart's testimony was not pressed upon the argument, and we entertain no doubt concerning its propriety because that witness was the defendant's own employee and engineer in charge of the station at the time of the accident, competent as an expert to testify upon the subject and in that capacity was fully qualified to testify concerning the continuous ground detector, although he had never used one.

The exclusion of said evidence offered "for the purpose of relieving the defendant company from liability," etc., was fully warranted by what seems to us the per-

578   ZINKIEWICZ *v.* CIT. ELEC. & ILL. CO., Appellant.

Opinion of Court below—Opinion of the Court.   [53 Pa. Superior Ct.

fectly obvious consideration that the company could not by any such private arrangement relieve itself of liability for breach of its duty to the traveling public in respect to a dangerous current of electricity which crossed the highway, and was exclusively manufactured, transmitted and controlled by the company itself.

If defendant's contention on this point were correct, electric companies could restrict their liability to the condition of main wires and relieve themselves from all liability for condition of branch wires conducting the current to the individual private customers, although the branch wires overhang the highway where they may become a source of public danger.

The private arrangement, of course, as between the company and the customer might impose upon the latter the cost of erecting and maintaining the branch wires, but certainly could not affect the company's responsibility in relation to third parties.

Public policy plainly prohibits such a conclusion.

The motion for a new trial is denied.

*Error assigned* among others was in refusing binding instructions for defendant.

*John McGahren,* with him *Eugene Brennan,* for appellant.

*John T. Lenahan,* with him *Edward A. Lynch,* for appellee.

OPINION BY PORTER, J., May 15, 1913:

The questions presented by this appeal were so fully considered and satisfactorily disposed of in the opinion of the court below overruling the motion of the defendant for judgment non obstante veredicto, which will appear in the report of this case, that we do not deem it necessary to discuss them at length. The plaintiff was injured by coming in contact with a wire used by the defendant

company for conducting an electric current of 2,200 volts to the manufacturing establishment of one of its customers. This wire had broken and fallen into the public highway along which the plaintiff was passing and had been in that position for four hours before the accident. The plaintiff charged in the statement of her cause of action that she "came inadvertently in contact with a defective, broken or sagged, uninsulated and highly charged live electric light wire, owned and controlled by said defendant, who negligently permitted the same to be and remain for a long space of time in a highly dangerous condition in, over and along the said highway. . . . That the said defendant did not use proper care and skill in constructing and maintaining its poles, wires and other apparatus in a safe condition, but on the contrary negligently constructed and adjusted its wires on its poles and for a long time previous to and up to the time of the injury heretofore stated, negligently permitted its wires to be in a sagged, broken or defective condition down, in and along the highway." This was more than a mere averment that the wire was broken, it was an explicit assertion that it had been permitted to remain broken, "down, in and along the highway," for a long time previous to the accident. No inference of negligence would arise on the part of the defendant from the mere breaking of the wire, in the absence of evidence of defective construction, failure to properly inspect, or of a previous condition of the wire which ought to have visited the company with notice that it was in a dangerous condition, but if the company permitted the wire to remain in the street, after notice actual or constructive of the condition, without taking reasonably prompt steps to avoid danger to those using the street, it would be liable for the consequences. The term "a long time," when used in referring to the continuance of a peril to those using a public highway, is a relative one. What would be a reasonable length of time, from the lapse of which notice to the party responsible would be inferred, must vary with the character of the peril and the surround-

ing conditions. Constructive notice to a municipality of a slight defect in the pavement of a cartway might not be inferred in so short a time, as in the case of a more deadly or more obvious peril. The character of the peril and the means which the responsible party has, or should have, for obtaining knowledge of its existence must in all such cases be taken into consideration. It was, therefore, entirely proper for the court below to admit the testimony of those duly qualified as experts in the business, tending to establish that if the plant of the defendant company was equipped with the necessary devices, commonly known and in general use, those in charge of the plant would have immediate notice of the breaking and fall of the wire which carried this deadly current, and that they could at once have turned off the current, thus avoiding all danger to the public. This testimony was in harmony with and supported the allegations of the statement: Smith v. Lehigh Valley Railroad Co., 232 Pa. 456.

The defendant could not escape liability from failure to perform its duty to take reasonable precautions to protect those using the public highway from injury by the electric current which it sent through the wires, by showing that it had been paid by some customer for putting up those wires and that the customer had agreed to notify the company in case a dangerous condition should arise: Daltry v. Media Electric Light, Heat & Power Co., 208 Pa. 403; Mullen v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54.

The judgment is affirmed.