# Milton Weaving Company, Appellant, *v.* Northumberland County Gas and Electric Company.

*Electric companies—Wire maintained by consumer—Defective insulation—Fire—Liability of electric company to consumer—Evidence—Res ipsa loquitur.*

1. An electric company is not bound to inspect electric appliances owned and maintained by its customers, nor is it liable to its customers for injuries or damages caused by reason of defects therein.

2. Where an injury results from the defective insulation of electric wires installed upon private property, partly under the control of the property owner, and partly under that of the electric

company, the burden is upon the property owner who seeks to charge the electric company with the loss, to prove negligence, and the doctrine of res ipsa loquitur does not apply.

3. Where in an action against an electric company to recover damages for the destruction of plaintiff's mill by fire resulting from the defective insulation of service wires at a point where they passed through the outer wall of plaintiff's building, a witness testifying for defendant stated that when in plaintiff's employ he had installed the service wire in the building, and the testimony of two other witnesses who were acquainted with the facts showed that defendant had not installed the wire, and the only witness for plaintiff to contradict such statements was a bookkeeper whose testimony showed that he had no direct knowledge as to who installed the wire, but only inferred that it was installed by defendant from entries in his books, the court did not err in directing a verdict for the defendant on the ground that such testimony was too indefinite and unreliable to be submitted to the jury.

4. In such case, evidence of a custom regarding the construction of service wires and the installation thereof by electric companies, was properly excluded, to admit proof of such custom would have taken from the parties the right to regulate their business dealings and relations as they might see fit and would, in effect, limit their right of contract.

Argued May 11, 1915.   Appeal, No. 88, Jan. T., 1915, by plaintiff, from judgment of C. P. Northumberland Co., Feb. T., 1914, No. 236, on directed verdict for defendant, in case of Milton Weaving Company v. Northumberland County Gas and Electric Company. Before BROWN, C. J., MESTREZAT, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for the destruction of plaintiff's mill.   Before CUMMINGS, P. J.

The opinion of the Supreme Court states the facts.

Verdict for defendant by direction of the court and judgment thereon.   Defendant appealed.

*Errors assigned* were rulings on evidence, and in directing a verdict for defendant.

*C. R. Savidge,* with him *Wm. H. Hackenberg,* for appellant.

*Seth T. McCormick* and *J. Fred Schaffer,* with them
*F. A. Witmer,* for appellee.

OPINION BY MR. JUSTICE FRAZER, Oct. 4, 1915:

Plaintiff owned and operated a weaving mill located
in the Borough of Milton, and defendant furnished elec-
tric current for lighting plaintiff's property. On January
21, 1913, plaintiff's mill and contents were destroyed by
fire, caused by a short circuit at the point where defend-
ant's service wires passed through the outer wall of
plaintiff's building to connect with a switch box and fuse
box located inside the mill. Plaintiff's evidence tended
to show that at the time of the fire the wires were at-
tached to the building by glass insulators mounted on
wooden brackets and entered the building through iron
conduits, which were not fitted with porcelain tubing
and one of which was without bushing at one end, to
prevent the insulation on the wire from rubbing against
the sharp edge of the pipe through which it passed. The
conduits sloped inward instead of outward and the wires
at the point where they entered the mill were without
"drip loops" to prevent water from rain and snow
entering the conduit and flowing into the building. As a
result of such defective construction water entered the
tubes or conduits, which contained wires with insulation
not fitted to withstand moisture. This condition or the
absence of proper insulation around the wires as they
entered the conduit or the combination of both, caused
a short circuit to be created, which set fire to the build-
ing and resulted in its destruction. In attempting to
establish defendant's liability by showing that it put
in place the defective wiring, plaintiff called its book-
keeper as its only witness on this point; the trial judge
considered the testimony of this witness so indefinite
and unreliable that he refused to permit the jury to
pass upon it, and sustained defendant's motion for bind-
ing instructions. The case thus turned upon the ques-
tion whether plaintiff or defendant was responsible for

the wiring which entered the building. A brief examination of the evidence will show the trial judge committed no error in thus ruling.

That the work of wiring the building on the inside was done by an electrician employed by plaintiff is undisputed. This workman was called as a witness on behalf of defendant and testified to inserting the conduits and wires through the wall of the building from the inside to the outside and making them ready to be connected by the electric company. He further said the conduits were placed through the wall with a downward slant toward the outside and were lined with porcelain insulators. A witness in the employ of the predecessor in title of defendant, called by defendant, testified to connecting the company's service main lines with the ends of the wires which extended through the wall to the outside of the building but did no work in connection with the wiring on the inside. This testimony was corroborated by another witness who assisted plaintiff's electrician in wiring the building. The only contradictory evidence was the testimony of the bookkeeper of plaintiff who stated the wires were not extended through the wall by plaintiff's electrician but that this work was done by employees of the electric light company when connection was made with the service wires from the outside. This witness did not testify positively to facts within his knowledge but rather to conclusions based on his recollection that no charge was made for placing the conduit and wires through the wall of the mill in the bill for materials, which came through his hands as bookkeeper. His entire testimony on this point is vague and indefinite as well as contradictory. In his direct examination the witness said he saw employees of the electric company place in position the conduits and wires which extend through the wall but on cross-examination repeatedly said he was testifying to the best of his knowledge only and avoided making positive statements. After considerable evasion of the direct question whether he actually saw

any person do this particular part of the work, he an-
swered in the affirmative. On being further pressed,
however, it appeared he merely saw the electric com-
pany's employees at work and concluded the connection
inside of the building was made by them as he noticed
no special charge for that work on the bill of their own
contractor. The bill referred to by this witness was pro-
duced later and the item of charge for this work pointed
out; he then admitted he saw no one actually do the
work and that the electric light company's men worked
entirely on the outside of the building. Such testimony
is without force when opposed to the clear and positive
statements of the men who actually did the work and
the trial judge was right in refusing to permit the jury
to pass upon it: Hyatt v. Johnston, 91 Pa. 196; Howard
Express Company v. Wile, 64 Pa. 201.

It was argued on behalf of plaintiff, however, that
even if the wires were constructed by plaintiff's work-
men, defendant still owed the duty of inspection be-
cause the defect, which lay between the outside service
wire and the meter which was under the direct control
of defendant, although inside plaintiff's building, was
readily discoverable by proper inspection.

Although there is conflict of authority on the question
of extent of duty of electric companies in regard to the
safety of appliances owned and maintained by its custom-
ers, the weight of authority in other jurisdictions sup-
ports the view that the company is not bound to inspect
such appliances and is not generally liable for injuries
or damages caused by reason of defect therein: 7 Thomp-
son on Negligence, White's Supplement, Section 807;
1 Joyce Elec. Law, 2 Ed., Section 445; Curtis on Elec-
tricity, pages 417 and 492 and cases cited. The exact
question appears to be without precedent in Pennsyl-
vania. It is generally held, however, that a person or
company furnishing electricity is bound to know not
only the extent of the danger incident to its use but to
exercise the highest degree of care practicable to avoid

injury to persons coming in contact with its appliances and to make the wires safe, not only by proper insulation but to keep them so by constant oversight and repair: Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540; Herron v. Pittsburgh, 204 Pa. 509; Yeager v. Edison Electric Co., 242 Pa. 101. These cases, however, do not decide the question involved here. To sustain its right to recover, Fedorawicz v. Citizens Electric Illuminating Co., 246 Pa. 141, is relied upon by plaintiff. In that case a child was injured by coming in contact with a charged broken electric light wire lying in the public highway. The defense was that the line was constructed at the expense of a lumber company for its own use, which company agreed to maintain, repair and provide for its inspection. This court, by Mr. Justice STEWART, said at page 146, in quoting from the case of Daltry v. Media Electric Light, Heat & Power Company, 208 Pa. 403: "That the company did not construct the line at its own expense cannot relieve it from the duty to exercise care in keeping it in proper condition and repair during the period the wire carried its electric current. The ownership of the wire cannot affect the company's liability for failure to observe this duty under the facts disclosed by the evidence in this case. When charged with electricity the wire was in the possession and control of defendant company, so far as concerned its duty to keep it in repair and in proper condition and position to protect those who might come in contact with it. The danger lay not in the wire but in the subtle fluid sent through it by the defendant company. It was not the wire that injured the boy but the electric current which it bore from defendant's dynamo. The use of the wire by the defendant and not the wire itself, caused the injury to the child, hence it logically follows that notwithstanding the ownership of the wire may have been in another, the defendant company must be considered as in possession of and as using it at the time of the accident and therefore responsible for any injury resulting

from the failure to inspect and keep it in proper condition and repair when charged with the company's electricity." The case of Daltry v. Media Electric Light, Heat & Power Co., 208 Pa. 403, quoted from by the court in the above case, was an action for damages for injury to a child by coming in contact with the end of a broken electric light wire which when in place extended across a lawn and connected defendant's pole with the house. This wire was installed at the tenant's expense and the premises were vacated when defendant discontinued the service by taking out the fuses in the transformer located under the eaves of the house. The current was still permitted to run through the service wire, which subsequently broke and hung down at the point where the child came in contact with it. This court by Mr. Justice MESTREZAT, said after using the language quoted above, "The ownership of the wire is not controlling as the liability for an injury caused by coming in contact with it is determined by the principle announced in that class of cases in which it is held that an electric railway company or an electric light company is responsible for injury where it negligently permits its wire to come in contact with another company's telephone or telegraph wire, which transmits the current and thereby causes an accident." Zinkiewicz v. Citizens Electric & Illuminating Co., 53 Pa. Superior Ct. 572, was also a case of injury to a pedestrian by coming in contact with a broken electric wire lying along the highway. It was there held to be no defense that defendant had received pay from the consumer for putting the wire in place and the consumer had agreed to notify defendant of defects in the appliances which might arise. It will be noted the above were all cases of injuries to third persons and are in this respect distinguishable from the case before us. Here the question arises between the company and the consumer, the very person who erected, owned and controlled the defective wire, and towards whom no duty on the part of defendant has been shown to exist in so

far as inspection of the consumer's appliances is concerned.

Plaintiff offered evidence of custom regarding the construction of service wires which offer was rejected by the trial judge. It is contended in the 16th assignment of error plaintiff was thus prevented from fixing liability on defendant. The offer was to ask the witness "Whether it was the general custom and practice of electric light companies to make the connection and run the service wires from the line or main cable wires to the building through the wall and into the fuse box, cut out box, as some evidence to go to the jury from which they may determine under whose supervision this outside construction was." The trial judge properly sustained an objection to this offer. The question was not what was the custom as to installing wires, but who installed the particular wires in this case. On this point there is direct and positive evidence without substantial contradiction, and proof of a custom contrary to the actual fact of the transaction would have been of no avail: Brown v. Pennsylvania Casualty Co., 207 Pa. 609. To admit proof of custom under such circumstances would take from the parties the right to regulate their business dealings and relations as they might see fit and would in effect limit their right to contract. This cannot be done: Stoddard v. Emery, 128 Pa. 436; Harris v. Sharpless, 202 Pa. 243.

The testimony of the electrician who did the wiring through the wall and also that of his assistant was to the effect that the work was properly done and since a contrary condition appeared at the time of the fire, plaintiff contends the burden is on defendant to show it was not at fault. This contention cannot be sustained as one who charges negligence must prove it. While there are exceptions to this rule in which the doctrine of res ipsa loquitur applies the facts of this case do not bring it within the exception. In East End Oil Co. v. Penna. Torpedo Co., 190 Pa. 350, it was said at page 353, "The

maxim res ipsa loquitur is itself the expression of an exception to the general rule that negligence is not to be inferred but to be affirmatively proved. The ordinary application of the maxim is limited to cases of absolute duty or an obligation practically amounting to that of an insurer. Cases not coming under one or both of these heads must be those in which the circumstances are free from dispute and show not only that they were under the exclusive control of the defendant but that in the ordinary course of experience no such result follows as that complained of." It is not contended that defendant comes under either of the enumerated heads. As to the last mentioned condition it is sufficient to say that in the present case the circumstances are not free from dispute and the wires and attachment which caused the loss were not under the exclusive control of defendant. The cause of the accident was a defectively insulated wire or defectively constructed apparatus for conveying the wire which was fully explained by plaintiff's own witnesses. Under these circumstances there is not room for presumption and inferences and the rule of res ipsa loquitur does not apply.

The judgment is affirmed.