# Adams *v.* United Light, Heat & Power Co., Appellant.

*Negligence—Electric light companies—Overcharged wire—Defect in an extension cord—Inspection of appliances not furnished by company.*

An electric light company is not bound to inspect and exercise continuous supervision over every appliance which a customer may see fit to use within a building to which the company furnishes light.

In an action against an electric light company to recover damages for death of plaintiff's husband, where it appears that deceased met his death by contact with an extension electric wire while working in the cellar of a building occupied by his employer, and the evidence shows that although the defendant, through a defect in a transformer, permitted its transmission wire to be overcharged, there would be no danger if the wires within the building were properly maintained, and there is also evidence that a defective extension wire which defendant had not installed, had been found grasped in the hand of the deceased, it is reversible error for the court to charge that the jury might entirely disregard the defect in the extension wire.

In such a case it is not reversible error for the court to permit evidence to be admitted that by reason of the defective transformer, wires going into other buildings in the vicinity had been charged with an excessive current within a few days prior to the accident.

Argued Nov. 14, 1916.  Appeal, No. 126, April T., 1916, by defendant, from judgment of C. P. Somerset Co., May T., 1915, No. 18, on verdict for plaintiff in case of Alice Adams v. United Light, Heat & Power Company.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and WILLIAMS, JJ.  Reversed.

Trespass to recover damages for death of plaintiff's husband.  Before RUPPEL, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial when Merrill Eichelberger, a witness for plaintiff was on the stand, the following offer was made:

Mr. Uhl:  We proposed to prove by the witness on the stand that about ten days prior to the death of E. R. Adams, the witness was in the house of Josiah Specht, about 150 feet from the store building in which E. R. Adams was killed and in attempting to turn off an electric light in the house of Josiah Specht, was knocked down and rendered unconscious for a long period of time. This in connection with evidence already in, and with further proof to show that the home of Josiah Specht was supplied by electricity from this defendant company coming through the same transformer that the current passed into the store building of W. E. and D. B. Specht; and also to be shown by other proof that an examination was made by representatives of the defendant company at the instance of Josiah Specht in the premises of Josiah Specht and that nothing wrong was found with the wiring therein.  This for the purpose of showing that the defendant company was furnishing or supplying an excess amount of electricity over and above the amount used for domestic purposes.  This to be followed by proof that other consumers of electricity purchased from the defendant company and coming through the same transformer that supplied the Specht store building, received shocks in attempting to turn on and off the electric current in their homes between the time that the witness

480    ADAMS *v.* UNITED L., H. & P. CO., Appellant.

Statement of Facts—Charge of Court below. [69 Pa. Superior Ct.

Eichelberger was shocked and the time that Mr. Adams was killed, and to prove that notice was given Mr. Barnhart, the representative of the defendant company, of such conditions.

By Mr. Berkey: The offer is objected to for the following reasons:

1st: It has already been shown that the wiring in the house of Josiah Specht had been constructed, maintained and controlled by him and that the defendant company, was without authority to have oversight of the same.

2d: The offer is at a period too remote from the time of the alleged accident in the other building.

3d: The introduction of this evidence is placing into the case a collateral issue that is wholly irrelevant and immaterial.

4th: It is not shown in the case that the witness was there either by authority of Josiah Specht, the owner of the building or by authority of the defendant.

5th: Generally, the offer is incompetent, irrelevant and immaterial.

By the Court: Objections overruled, evidence admitted and bill sealed to the defendant. (1)

The court charged in part as follows:

["I have carefully considered this testimony, gentlemen, and I can see no evidence in the case to sustain the allegation that there was any defect in the wire in the cellar of the Specht store. If there was, then we might have two questions here—whether the company was guilty of negligence or whether the owners of the building and the deceased were guilty of negligence, and it would complicate matters to some extent, but I find no evidence of any defect in any of the appliances, the lamp or the wire or anything connected with this lighting apparatus inside of the building."] (2)

["The party alleging contributory negligence must prove it, and in this case I see no evidence of contributory negligence. No evidence which charges any fault to the deceased, E. R. Adams, or those under whom he

was employed, and therefore eliminate all matters of that kind from the consideration of this case."]   (3)

["There has been some controversy about this cord. Under the view the court has taken and instructed you it becomes wholly immaterial. You need give that no consideration whatever."]   (4)

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Errors assigned* were (1) rulings, on evidence quoting the bill of exceptions; (2-4) portions of charge as above quoting it.

*J. A. Berkey,* with him *C. L. Shaver,* for appellant.— The defendant was not liable as it had no contract over the extension wire: Milton Weaving Co. v. Northumberland G. & E. Co., 251 Pa. 79.

It has been held that a guest in a hotel injured by an electric light wire falling on him, but the wiring not having been done by the one who furnished the electricity, there was no presumption of negligence on the part of the electric company.

See Harter v. Colfax Electric Light & Power Co., 100 N. W. R. 508. See also National Fire Insurance Co. v. Denver Consolidated Electric Co., 63 Pac. Rep. 949; Fikeisen v. Wheeling Electrical Co., 27 L. R. A. N. S. 893; San Antonio G. & E. Co. v. Ocon, (Tex.) 39 L. R. A. N. S. 1046; Hoffman v. Leavenworth L., H. & P. Co., 50 L. R. A. (N. S.) 574; Pressley v. Bloomington & Normal Ry. & Light Co., 111 N. E. Ill. 511; Princeton L. & P. Co. v. Ballard, 109 N. E. Ind. 405.

*Chas. H. Ealy,* of *Uhl & Ealy,* with him *Bruce H. Campbell* and *Francis B. Hamilton,* for appellee.—Even if there was no obligation upon the company to keep interior wires in repair and its only obligation was to furnish electric current, it was required to furnish the proper amount of current and the sole question submitted to

the jury was upon the amount of current furnished: Alexander v. Nanticoke Light Co., 209 Pa. 571; Sowers v. McManus, 214 Pa. 244; Derry C. & C. Co. v. Kerbaugh, 222 Pa. 448.

OPINION BY PORTER, J., March 8, 1918:

The plaintiff brings this action to recover damages for the death of her husband, which she alleges to have been caused by the negligence of the defendant company. The decedent was employed by W. E. & D. B. Specht who conducted a store in a building to which the defendant company furnished an electric current for the purpose of light. Among the duties of the decedent was the taking care of the heating apparatus, and for that purpose he went to the cellar, on November 24, 1914, and after he had been there for some time other persons who went into the cellar found his body lying on the floor while one of his hands grasped an extension cord to which an electric lamp was attached. He was dead, the hand which had been in contact with the cord containing the electric wire was found to be badly burned and the evidence seemed to leave no doubt that he had been killed by an electric current. The plaintiff recovered a verdict and judgment in the court below and the defendant appeals.

The main lines of the defendant company carried a current of twenty-two hundred volts, which was reduced by passing through a transformer located on a pole near the Specht property to one hundred and twenty volts and through this transformer the Specht building and a number of other customers received the current for lighting purposes. The evidence clearly established that so long as the transformer was kept in proper condition the current which passed through it could be safely used for lighting purposes, if the wires and appliances within the buildings of the customers were properly maintained. The plaintiff alleged that the transformer was not kept in proper condition and that it permitted an excessive current to pass through. There can be no doubt, under

the evidence, that if the transformer was out of order it would have the same effect upon all the customers who received their current through it.   Evidence that the wires in other buildings supplied through this transformer had been charged with an excessive current within a few days prior to this accident was admissible for the purpose of showing that the transformer was not in proper condition and was permitting a dangerous current to pass through.   The transformer was the very device which the company had installed for the purpose of making safe the current furnished to the Specht building.   The specifications of error which refer to the admission of this testimony are overruled.   Whether the transformer was permitting a dangerous current to pass through was, under the evidence, a question of fact for the jury and the court below properly refused to give binding instructions in favor of the defendant.

The defendant company contended that the decedent was injured because of the dangerous condition of the extension cord which had been found in his hand when dead.   This cord was suspended from the ceiling of the cellar, was some ten or twelve feet long, had an electric lamp at the end thereof which could be carried about and when not in use was hung over a nail or spike.   This cord and all the electric wiring appliances within the building had been installed by Josiah Specht who had an electric plant and for many years supplied his own current.   Some years prior to the accident the present owners, his sons, acquired the property and subsequently discontinued the use of the private electric plant and since that time they have obtained their electric current from the defendant company, using the wires and appliances within the building which had been installed by their father.   The defendant company had not been in any way connected with the installation or maintenance of the electric appliances within the building.   The witnesses for the plaintiff who found the body of the decedent with his hand grasping the extension cord said that the part of the

cord which was grasped in his hand was not far from the end thereof. Two witnesses called by the defendant, A. M. Barnhart and Herman Berkey, testified that they examined the extension cord a very short time after the accident and that about one foot from the end thereof they found that it had been spliced, wrapped with tape and that one of the wires in the cord was bare, having no covering thereon for about two inches. This condition of the extension cord would cause any person who grasped it at that point to receive the full force of the current passing through the wires. The evidence would certainly have warranted a finding that under the conditions there existing it would be very dangerous for a person to receive the current of electricity generally used for the purpose of incandescent lighting and that it might cause death. Whether this defect in the extension cord was the cause of the death of plaintiff's husband was a question of fact for the jury. The learned judge of the court below withdrew this question from the jury by saying: "I have carefully considered this testimony, gentlemen, and I see no evidence in the case to sustain the allegation that there was any defect in the wiring of the cellar of the Specht store," which part of the charge is the subject of the second specification of error. The court also said: "There has been some controversy about this cord. Under the view the court has taken and instructed you it becomes wholly immaterial. You need give that no consideration whatever," which is assigned for error in the fourth specification. If the death of plaintiff's husband was caused by the defect in the extension cord was the defendant company liable?

The defendant company had not, as we have already said, had anything to do with the installation of the extension cord or any of the wires in the building, it had never controlled them in any manner, and there was no evidence that the company or any of its agents or employees had any knowledge of any defect therein. We are not here dealing with a case in which the defendant

permitted a wire, which carried an excessively high current, to dangle in a public highway, as was the fact in Fedorawicz v. Citizens Electric, Etc., Co., 246 Pa. 141, and Zinkiewicz v. Citizens Electric, Etc., Co., 53 Pa. Superior Ct. 572. Nor is this case similar to Daltry v. Media Electric Light, Etc., Co., 208 Pa. 403, in which a customer had procured the defendant company to install a wire, for which the customer paid, but which carried a high current from the street over a lawn upon which children were known to play, to the transformer of the company which was fastened under the eaves of the building, and the customer having discontinued the service the company removed the fuse from the transformer, thus cutting off the current from the house, but permitted the wire passing over the lawn to remain charged after it had broken and the end was dangling near the ground. If this company is liable for an injury caused by that defective extension cord, it can only be upon the ground that an electric light company is bound to inspect and exercise continuous supervision over every appliance which a customer may see fit to use within a building to which the company furnishes light. The question seems to be without exact precedent in Pennsylvania, but it was said in Milton W. Co. v. Northumberland Gas & Electric Co., 251 Pa. 79: "Although there is a conflict of authority on the question of the extent of duty of electric companies with regard to the safety of appliances owned and maintained by their customers, the weight of authority in other jurisdictions supports the view that the company is not bound to inspect such appliances and is not generally liable for injuries or damages caused by reason of defect therein." It was held in that case that the electric company was not liable to the customer, the owner of the property, for injury to the property by fire caused by a defect in the wiring. The appellee seeks to distinguish that case from the present one upon the ground that her husband was a third party and not responsible for the defective condition of the ex-

tension wire, whereas in the case with which the Supreme Court dealt the person whose property was destroyed by fire was the one who owned and controlled the defective wire. It may be that an electric company should be held responsible for injuries to third parties caused by defective wiring of a building if it continued to furnish current after knowledge of the defect in the wiring, but that question we are not here called upon to decide. The furnishing of electric current for lighting purposes is a necessity of modern life, but the law requires that one who generates and sells this dangerous agency should use proper care to avoid resulting harm. When the current furnished to a house is such as may be safely used if the house is properly wired, and the appliances within the building are installed, owned and controlled by the customer, to hold that the duty devolved upon the electric company to look after the construction and maintenance of the wires installed and controlled by private persons would impose upon such companies burdens so great as to render their existence impracticable, if not impossible. The weight of authority in other jurisdictions is clearly against imposing such a duty upon electric companies. Many authorities sustain this view, but we deem it sufficient to cite the following: San Antonio Gas & Electric Co. v. Ocon, (Texas) 39 L. R. A. N. S. 1046; Hill v. Pacific Gas & Electric Co., 22 Cal. App. 788, 136 Pac. 462; Pressley v. Bloomington & Normal Ry. & Light Co., 111 N. E. 511 (Illinois); Princeton Light & Power Co. v. Ballard, 109 N. E. 405 (Indiana), and McGee v. N. Y. Telephone Co., 107 N. E. 493 (New York). We are of opinion that under the evidence in this case the jury should have been instructed that if they found that the death of the husband of the plaintiff was caused by the defective extension cord and not by an excessively heavy current the verdict should be in favor of the defendant. The specifications of error which involve this question are sustained.

The judgment is reversed and a venire facias de novo awarded.