## Smith, Admr., v. Pennsylvania Power & Light Company

*Myers & Myers* and *E. M. Biddle, Jr.*, for plaintiff.

*Frederick J. Templeton* and *Arthur H. Hall*, for defendant.

REESE, P. J., June 1, 1944.—On the evening of June 25, 1942, the additional defendant, J. Forrest Hempt, was driving his coupé slowly along a road leading southwardly from Eberley's Mills. An employe was crouched in the rear deck leading two colts which were owned by Mr. Hempt and were being transferred from one farm to another. The colts started to come around the car and the employe shouted, whereupon, in some manner, Mr. Hempt's car struck one of the electric poles maintained by defendant, Pennsylvania Power & Light Company, along the left-hand side of the road. The impact caused the two wires, carrying 6,900 volts, to become disengaged from the cross-arm and to drop to within a few feet of the ground, although

still suspended from two poles, one on either side of the one which had been struck.

Mr. Hempt received a severe electric shock, probably as he started to alight from his automobile. He was badly burned and rendered unconscious. Passersby summoned an ambulance, a fire truck, and two employes of defendant light company, who ultimately arrived with a company truck. As the ambulance prepared to leave with Mr. Hempt, the crowd was told to get back and the decedent herein, Robert H. Smith, 13-year-old son of plaintiff, came into contact with the wire and was electrocuted. The jury made a special finding that death was instantaneous.

Evidence adduced by plaintiff indicated defendant light company's employes were on the scene for five to fifteen minutes before the boy came into contact with the wire but that they did nothing to remedy the dangerous situation. One of the employes testified that within two minutes they could have gone back along the road and at Eberly's Mills could have used a switch to turn off the current in the line. He also testified that in five to eight minutes the wire could have been moved or raised to eliminate all danger.

Two actions in trespass were brought by plaintiff, the boy's father, as administrator, one under the Death Acts of April 15, 1851, P. L. 669, sec. 19, and April 26, 1855, P. L. 309, and the other under the Survival Act of July 2, 1937, P. L. 2755, amending section 35 (b) of the Fiduciaries Act of 1917; the former action was to recover damages for funeral expenses and for the loss to the boy's parents of his services until he would have reached the age of 21; the latter was an action on behalf of the boy's estate to recover for the loss of earnings after he would have attained his majority.

In each case a verdict was returned for plaintiff against the light company, but in each case a verdict was returned in favor of the additional defendant,

Hempt. The light company filed motions for a new trial and for judgment n. o. v. At the oral argument the motion for a new trial was abandoned and we have before us the motion for judgment n. o. v.

The principal reason urged in behalf of the latter motion is that, since the boy's death was instantaneous, he had no cause of action in his lifetime and hence his administrator cannot maintain an action under the Act of 1937, supra. In Pezzulli v. D'Ambrosia, 344 Pa. 643, the Supreme Court held that where a suit for personal injuries is not brought during his lifetime by an injured person two actions may be brought after his death—one under the Death Acts of 1851 and 1855, supra, on behalf of the proper next of kin, and the other under the Survival Act of 1937, supra, on behalf of the estate of the decedent. The Supreme Court held that these actions are cumulative and not alternative, although they must not work a duplication of damages. It was further held that where the decedent is a minor his administrator may recover, under the Survival Act, for the estate the present worth of the minor's loss of earning capacity during his life expectancy after reaching 21 years of age.

At page 648 of the opinion in the Pezzulli case appears the following:

"During the interval, however short, which elapses between the occurrence of the accident and the death of the injured person—in the present case 10 minutes—there accrues to him a cause of action, because of the injury inflicted upon him, which entitles him to recover, if he has time in which to bring the suit, the present worth of his loss of earning capacity during his life expectancy. It is this cause of action which passes by the act of 1937 to his personal representative."

Defendant herein relies on the foregoing language as justifying its contention that a survival action under the Act of 1937 will not lie where the wrongful

death is instantaneous. The Act of 1937 provides, inter alia:

"Executors and administrators shall have power . . . to commence and prosecute . . . all personal actions which the decedent whom they represent might have commenced and prosecuted . . . if he had lived."

We find nothing in this language of the act warranting the construction that an administrator can recover his decedent's loss of earning capacity during his life expectancy where the decedent lives for 10 minutes (as in the Pezzulli case) but that there can be no such recovery where the decedent's death is instantaneous. To make any such distinction would seem to us to be a flagrant violation of the Statutory Construction Act of May 28, 1937, P. L. 1019, which, in section 52, provides that in construing statutes the courts may be guided by the presumption that "the Legislature did not intend a result that is absurd or unreasonable"; and in section 58 that "the rule that laws in derogation of the common law are to be strictly construed, shall have no application to the laws of this Commonwealth hereafter enacted"; and in the same section that laws "shall be liberally construed to effect their objects and to promote justice".

As pointed out in the Pezzulli case, supra, if an injured person should institute an action a moment before his death, the action would be continued by his administrator; if the injured person does not sue, the administrator may, under the Survival Act of 1937, commence an action. In either event the damages recoverable are the same. But according to the contention of defendant herein there could be no recovery where the decedent's death is instantaneous. Such a construction of the applicable legislation would seem to be absurd and unreasonable and in no wise to promote justice.

Defendant argues that the important fact in the Pezzulli case is that the decedent lived for 10 minutes

and hence had a cause of action which survived to his administrator. Where is the line to be drawn? If 10 minutes is long enough, isn't 9, 5, or 1 or 2 minutes sufficient? Isn't a few seconds enough? If so, we can see no justice in denying recovery where the decedent's death was instantaneous. It may be argued that the Pezzulli case indicates that the decedent must live long enough to bring suit and that 10 minutes is long enough to do so. Practically this would be improbable, if not impossible. With any such view should be compared Cordingly v. Kelly, 276 Pa. 374, where an injured person remained unconscious for two days until death but during his lifetime an action was started in his name. Holding that the decedent could not have started or authorized an action, the court held that the widow could maintain an action for wrongful death. Hence, mere lapse of time seems unimportant. In one case decedent lived for two days and it was held he could not bring an action. Hence, to say as a matter of law that 10 minutes is a long enough time within which to sue after being critically injured seems slightly incongruous.

Section 11 of article I of the Constitution of Pennsylvania provides that "every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law". Section 21 of article III provides that "in case of death from such injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted". At first, of course, the General Assembly provided only for an action for wrongful death for the benefit of certain next of kin under the Acts of 1851 and 1855. The foregoing statutes and constitutional provisions were commented on in Moe v. Smiley, 125 Pa. 136. Plaintiff's decedent had been instantly killed. The court, nevertheless, said that "it is idle to say that when a man is killed by unlawful violence it is not an injury to his person. It is for just

such injuries that the act of 1851 gives the right of action to the widow . . ."

Hence, under the constitutional provisions guaranteeing a remedy for injury to the person and survival of the right of action where death follows from the injuries, instantaneous death did not prevent application of the statutes which gave a remedy to next of kin. The Constitution made no distinction between deaths that are instantaneous and those that are not. The legislature by the Act of 1937 has now included the estate of the deceased among those entitled to recover where death is caused by injuries wrongfully inflicted. If, as stated in Moe v. Smiley, there is injury to the person when a man is instantly killed, the right of action should survive to whomever the legislature says is to be benefited—in the present case, the estate of the decedent.

In our opinion the only sensible and just conclusion that we can reach is that under the Act of 1937 a personal representative of a person wrongfully killed can, where the decedent has not sued, *commence* an action for the damages which the decedent could have recovered, viz, the present worth of loss of earning capacity during life expectancy, and that is so whether death is instantaneous or not.

In view of this conclusion, it becomes unnecessary to pass upon plaintiff's motion to set aside the special finding of the jury that death was instantaneous.

One question remains. Defendant contends that its failure to remedy the dangerous situation created by Hempt was not a proximate cause of the boy's death. We see no merit in this contention. In Zinkiewicz v. Citizens' Electric & Illuminating Co., 53 Pa. Superior Ct. 572, 575, the court said that, in view of the extraordinary care which electric light companies are bound to exercise, they will be responsible for the consequences of permitting a live wire to dangle upon a road

after notice, actual or constructive, regardless of the causes producing such a condition.

And now, June 1, 1944, the motions for new trial having been abandoned, they are hereby overruled; the motions for judgment n. o. v. are overruled and dismissed and judgment is hereby entered in favor of Kenneth N. Smith, administrator of Robert H. Smith, deceased, on behalf of the parents of said decedent, and against the Pennsylvania Power & Light Company, in the sum of $1,778; and judgment is hereby entered in favor of Kenneth N. Smith, administrator of Robert H. Smith, deceased, on behalf of said decedent's estate, and against the Pennsylvania Power & Light Company, in the sum of $12,500.