# Mullen *v.* Wilkes-Barre Gas and Electric Company, Appellant.

*Negligence—Electric light company—Defectively insulated wire—Infant —Climbing tree.*

1. A boy of tender years who while at play climbs a chestnut tree standing upon a sidewalk of a street, and is injured by coming in contact with a defectively insulated electric wire, is entitled to recover damages for his injuries from the electric light company maintaining the wire, where it appears that the tree stood on premises not belonging to the company; that the defective insulation of the wire in the branches of the tree had continued for a period of from four to six months before the accident; that during this period sparks had been emitted by the contact of wire and branches; and that in pleasant weather the children of the neighborhood were accustomed to assemble about the tree to play, to climb into it in the progress of their sports and games, and, in proper season, to secure the nuts it bore.

2. A company which uses such a dangerous agent, as a wire charged with an electric current, is bound not only to know the extent of the danger, but to use the very highest degree of care practicable, to avoid injury to everyone who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise in contact with them.

Argued March 4, 1908. Appeal, No. 52, March T., 1908, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1905,

4 MULLEN *v.* WILKES–BARRE G. & E. CO., Appellant.

No. 530, on verdict for plaintiff in case of Edmund Mullen, by his father and next friend, Festus Mullen, and said Festus Mullen, each in his own right, v Wilkes-Barre Gas & Electric Company. Before RICE, P. J., PORTER, HENDERSON, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before LYNCH, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Edmund Mullen for $350, and for Festus Mullen for $150. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*R. B. Sheridan,* with him *John T. Lenahan,* for appellant.— The defendant was not liable: Guilmartin v. Phila., 201 Pa. 518; Oil City, etc., Bridge Co. v. Jackson, 114 Pa. 321; Hector v. Electric Light Co., 25 L. R. A. 554; Keefe v. Electric Lighting Co., 21 R. I. 575 (43 Atl. Repr. 542); Sullivan v. R. R. Co., 156 Mass. 378 (31 N. E. Repr. 128); Cumberland Tel. & Tel. Co. v. Martin, 63 L. R. A. 469; Brush Electric Light & Power Co. v. Lefevre, 93 Texas, 604 (57 S. W. Repr. 640); Swanson v. Crandall, 2 Pa. Superior Ct. 85; Rodgers v. Lees, 140 Pa. 475; Gaughan v. Philadelphia, 119 Pa. 503; Gilles v. R. R. Co., 59 Pa. 129; Thompson v. R. R. Co., 218 Pa. 444; Railroad Co. v. Schwindling, 101 Pa. 258; Hydraulic Works Co. v. Orr, 83 Pa. 332.

*M. J. Mulhall,* for appellee, cited: Daltry v. Electric Light, etc., Co., 208 Pa. 403; Fitzgerald v. Electric Illuminating Co., 200 Pa. 540; Temple v. Electric Light & Power Co., 89 Miss. 1 (42 So. Repr. 874).

OPINION BY HEAD, J., February 26, 1909:

The defendant corporation was engaged in furnishing electric light to the borough of Ashley. Its high tension current was carried through the streets by overhead wires strung on poles,

which, on Main street, were located in or near to the sidewalk. At some little distance from the curb, in the sidewalk along that street, there stood a horse-chestnut tree. It seems to be conceded that the defendant had no property right of any kind in the tree or the premises on which it stood. Two of its wires, however, passed through the upper branches of the tree. The testimony practically established that the insulation of at least one of these wires had become worn away and that for a period of from four to six months before the accident, sparks were emitted by the contact of wire and branches, especially during wet or snowy weather. It also established that, in pleasant weather, the children of the neighborhood were accustomed to assemble about this tree to play, to climb into it in the progress of their sports and games and, in proper season, to secure the nuts it bore.

On a summer afternoon the plaintiff, a boy of tender years, was playing, with some companions, about the tree and climbed up among the branches. Whether any part of his body came into actual contact with the live wire is not made clear, but there is no room to doubt that he received an electric shock of such intensity as to render him unconscious. His body being supported by the forks of the tree, he did not fall, and, aid coming quickly, he was lifted down to the sidewalk where an examination disclosed marks, as of burns, at several places on his body.

The record, as the case comes to us, does not require any discussion as to the extent of his injuries; it is sufficient to say that after his recovery this suit was brought and the trial resulted in a verdict and judgment in his favor.

It was not contended in the court below, nor is it here, that the doctrine of contributory negligence has any application to the case on account of the tender years of the plaintiff. It was not denied there, nor is it here, that, under the evidence, the defendant would be visited with at least constructive knowledge of the dangerous condition of its wire, and that, had an injury resulted therefrom to one, towards whom, at the time and place of the injury, the defendant owed any legal duty in respect to the condition of its wires, its responsibility would be made out.

The single proposition urged upon us in the able printed brief of the appellant is that, conceding the obligation of the defendant to keep its wires safe as to those lawfully using the streets and sidewalks in the ordinary and usual way, as well as to those who, in the performance of some duty or the exercise of some right, might be required to approach them; no such obligation existed as to those, although children of immature age, who in the pursuit of pleasure or adventure, voluntarily placed themselves in dangerous proximity to its wires stretched twenty feet above the ground. Many cases are cited as supporting this position, among them Thompson v. R. R. Co., 218 Pa. 444, and those therein reviewed. But all of these may be broadly distinguished from the case at bar because they dealt with situations where the plaintiffs were trespassers, or at most mere licensees upon the property of the defendants. Here, as we have already observed, the tree was the private property of the owner of the premises on which it grew and the children seem to have enjoyed, at least the permissive right from that owner, to play in its branches and gather the nuts they bore.

The plaintiff therefore, in climbing the tree, was in no sense committing any trespass or infringement upon any right of the defendant; nor did his act need the aid of any invitation, permission or license from the latter to keep it in the category of wholly innocent acts. Had the tree been an apple tree bearing luscious fruit and, had the owner, whilst picking that fruit, received the same injury as did the plaintiff here, could the defendant successfully contend it owed him no duty in respect to the condition of its wires? If the owner, instead of gathering his fruit himself, had expressly invited and authorized the plaintiff to take it for his own use or for distribution among his fellows, would the situation be materially different? Or can it be that the yoke of responsibility would be lifted from the shoulders of the defendant if the permission of the owner was general, to the boys of the neighborhood, rather than particular to one of them; was implied from his conduct rather than expressed in words?

Is it true in such cases, or in the case at bar—if the supposed ones are not ejusdem generis—the defendant owed no duty

whatever, in respect to the condition of its wires, to this plaintiff or to other children who were accustomed to use the tree as he did? In Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540, Mr. Justice MITCHELL, defining the obligations of those who introduce into a community that dangerous agent known as electricity, said: "The company, however, which uses such a dangerous agent [a wire charged with an electric current] is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them."

In this carefully chosen language, quoted and adopted in Daltry v. Media Electric Light, etc., Co., 208 Pa. 403, our highest judicial tribunal has plainly defined the measure of the defendant's obligation and described the class, to every member of which the law extends the protection that would be secured by the faithful discharge of that obligation. Why was not the plaintiff in that class? Upon what theory can the defendant successfully contend that he was not "lawfully in proximity to its wires?" Upon what principle of law or reason may it rest the claim that this boy was bound to repress the natural and wholly innocent impulse to climb up among the shady branches of the tree on a summer afternoon, to the end that it should be relieved of its obligation to remove or repair its dangerous wire? We can discover none.

In Daltry v. Light, etc., Co., 208 Pa. 403, it appeared that the plaintiff, a young boy, and his companions were accustomed to play on a lawn owned by a gentleman who occupied the residence only during portions of the year. At the time of the accident the house was closed. When occupied it was lighted by electricity furnished by the defendant. The current was carried from the pole line in the street by a wire across and above the lawn to the building. Before it was vacated the company was requested to cut off its current so it would not pass into the empty house. "This was done by taking out the fuses at the transformer which rested against the side, and just beneath the eaves, of the house. The electric current was thus prevented from entering the house but not from passing through the wire extending from

the house to the feed line at the street.  After the current had
been cut out the wire broke between the house and a tree on the
lawn through which it passed and was tied to the branches of
the tree.  At the time of the accident it hung from the tree
within twelve or eighteen inches of the ground."  The plaintiff,
whilst playing on the lawn, accidentally came in contact with
this live wire and was seriously injured.

One of the grounds of defense taken by the company at the
trial of the action which followed the injury was that the plain-
tiff was a trespasser on the lawn and therefore it owed him no
duty at that place.  In an elaborate opinion Mr. Justice MES-
TREZAT shows the unsoundness of such a defense and again de-
clares the existence of the obligation of a defendant under con-
ditions closely resembling those presented by the case at bar.
"If it be conceded that the boy was technically a trespasser as
against Mr. Darlington who owned the premises, he was not a
trespasser as against the defendant company who had neither
the possession nor right of possession of the property. . . . As-
suming then, as we must assume, that the defendant company
was in possession of, and using, the wire for the purpose of trans-
mitting its electric current, and that as against it the boy was
not a trespasser, its duty to the children at the place and time
of the accident was to exercise such care over the wire as was
demanded by the great danger to which they were exposed.
Having constructed the line across the lawn to the house in
proximity to the carriageway, it knew that children as well as
adults might frequent the way and, hence, the necessity for
keeping its wires in proper condition and repair to avoid danger.
It must be presumed that the company also knew what the evi-
dence disclosed as a fact that children used the lawn of the
premises near the gateway and in the vicinity of the wire as
well as the street in front of the premises as a playground.  Such
conditions existed for a sufficient length of time to warrant the
inference of notice to the company."  So similar in principle
and fact is that case to this that the language quoted might
have, with equal propriety, been written of the case at bar.

Again in Kreiner v. Straubmüller, 30 Pa. Superior Ct. 609,
this court had occasion to consider the rights of children playing

in the street and the obligations towards them of those who placed in the streets such things as would likely become dangerous to little ones thus engaged. There the defendant, for his own convenience and without objection from the municipal authorities, was accustomed to keep a number of barrels piled on the sidewalk in front of his premises. The plaintiff, a small boy, playing with his companions in the street, climbed upon the pile which was insecure and was injured by the fall of the barrels. In speaking for this court Judge HENDERSON uses the following: "It is a well established rule that those controlling property on, or immediately adjacent to, a public highway must have regard to the reckless and thoughtless tastes and traits of childhood. . . . Children, wherever they go, must be expected to act upon childish instincts and impulses; others, who are chargeable with a duty of care and caution toward them, must calculate upon this and take precautions accordingly. . . . It was not unlawful for the children to play upon the street, and it cannot be said that they had no business there. The owner of the premises owed them a duty to provide against the consequences of their inexperience and youthful inclination to play upon his property placed on the sidewalk in a position which might attract them."

No one of the cases cited by the learned counsel for appellant is in conflict with the principles and rules enunciated in the cases from which we have quoted, or with the conclusion which must follow from their application to the case at bar. Of Guilmartin v. Philadelphia, 201 Pa. 518, the one nearest in principle to this one, Judge HENDERSON observed: "In the latter case the child was injured by a falling gate on which he had climbed. The city was not required to anticipate dangers resulting from the improper use of objects safe in themselves, and for the use for which they are designed. In the same case, however, it is said: 'If an object was in itself dangerous, or might become dangerous if a child chanced to set it in motion while playing with it, or by running against it, there was a duty on the city to take such precaution as was reasonable, under the circumstances, to prevent injury by it.'"

We are therefore led to the conclusion that the plaintiff was

lawfully playing in the public street. That whilst so doing he was entitled to such protection, as against the wires of the defendant and the current they carried, as would be afforded by its performance of the obligation defined by Mr. Justice MITCHELL, in the opinion we have quoted. That the learned trial court could not have declared, as matter of law, that this protection had been forfeited because he climbed into the tree, and that, in submitting the case to the jury in a charge of which there is no complaint, no error was committed.

Judgment affirmed.