## CARL R. THOMPSON, BY GUARDIAN, Respondent, v. CITY OF SLATER, Appellant.

### St. Louis Court of Appeals, April 3, 1917.

1. **ELECTRICITY: Injury to Boy: Maintenance of Wire in Tree: Attractive Nuisance: Sufficiency of Petition.** In an action for an injury sustained by a small boy by coming in contact with an electric light wire in a tree into which he had climbed, allegations in the petition, that the tree was a small one, standing in the street in front of a certain residence, that defendant's wires were negligently strung through its lower branches, where they might injure persons, particularly children, who might get into the tree, with the insulation off same, and that they were highly dangerous to persons who might come in contact with them, or the tree, and that defendant either knew of said dangerous condition, or could have known thereof by the exercise of ordinary care, were sufficient, after verdict, as against an objection that there was no allegation that defendant knew, or should have known, that children would climb into the tree; the charge that defendant strung its wires through the tree implying that it knew of the character and location thereof, and, having such knowledge, knew, or ought to have known and reckoned with the fact, that boys, following their natural instincts and impulses, were quite likely to climb into the tree.

Thompson v. City of Slater.

2. ———: ———: ———: ———: Sufficiency of Evidence.  In such case, *held* that the evidence presented a question for the jury as to whether or not defendant was negligent in placing uninsulated wires in the tree, which was so located that it was likely that boys would climb into it.

3. ———: Maintaining Wire in Tree: Duty.  An electric company, maintaining a dangerous wire through a tree, is bound to anticipate that persons may lawfully climb into the tree, and accordingly it must exercise due care to prevent injuries to such persons from such wire.

4. ———: Injury to Boy: Maintaining Wire in Tree: Proximate Cause.  Where a boy climbed into a tree and a limb thereof broke, throwing him against a high-voltage electric wire, which was insufficiently insulated and negligently placed in the tree, the proximate cause of his resulting injuries was the negligence of the electric company, and not the breaking of the limb.

5. NEGLIGENCE: Liability for Unanticipated Result.  In an action for injuries resulting from negligence, it is not essential that defendant could reasonably have anticipated that the very injury would occur, or that it would happen in the precise manner in which it did, but it is sufficient if the circumstances are such that defendant ought to have anticipated that some injury would be likely to result from its negligence, that plaintiff's injury did result therefrom, and that it appears to be a natural and probable consequence thereof.

6. ———: Proximate Cause: Contributing Causes: Liability of Tortfeasor.  A defendant may be held liable even if the casualty was not caused by his sole negligence, but by his negligence concurring with that of another or with an act of God or an inanimate cause; the negligence of defendant being a part of the direct and proximate cause of the injury, and without which it would not have happened.

7. APPELLATE PRACTICE: Remarks of Counsel: Prerequisite to Review.  Where, on objection to remarks made in argument to the jury, the court directed counsel to confine his argument to the facts shown in evidence, but no request was made to rebuke counsel and no exception to the remarks was saved, there was no error.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*S. B. Burks* and *David H. Robertson* for appellant.

(1) The court erred in overruling defendant's de-murrer to the petition. The petition charges no facts constituting negligence on the part of defendant. It neither alleges that defendant knew or ought to have known that children would climb into the tree, but simply counts on the maintenance of the wires through the tree as negligence. Defendant could not be negligent in this respect unless there was some fact from which it ought to reasonably anticipate that plaintiff would climb the tree and come in contact with the wires, and this must be alleged. Temple v. McComb, etc., Co., 89 Miss. 1; Mullen v. Wilkesbarre, etc., Co. (Pa.), 177 Atl. 1108; Benton v. N. C. Pub. Serv. Co., 165 N. C. 354, 81 S. E. 448; Nelson v. Branford Light, etc., Co., 54 Atl. 393; Graves v. Washington Water P. Co., 87 Pac. 956; Brown v. Panola L. & P. Co., 137 Ga. 352, 73 S. E. 580; Meyer v. Union Light, etc., Co., 151 Ky. 332, 151 S. W. 941; Mayfield Water, etc., Co. v. Webb's Admr., 111 S. W. 712; O'Gara v. Phila. El. Co., 90 Atl. 529; Sheffield Co. v. Morton, 161 Ala. 153, 49 So. 772; Trout v. Phila. El. Co., 236 Pa. 506, 84 Atl. 967; Weatherby v. Gas & El. Co., 75 Atl. 8; Parker v. Charlotte El. Ry. Co. (N. C.), 85 S. E. 33; Keefe v. Narragansett El. L. Co. (R. I.), 43 Atl. 542; Freeman v. Bucklin Heights R. Co., 54 App. Div. 596, 66 N. Y. S. 1052. (2) The court erred in refusing to instruct the jury to return a verdict for defendant at the close of plaintiff's evidence and at the close of all the evidence. (a) The defendant was not negligent in maintaining the wires through the tree. See authorities cited under point I. (b) The maintenance of the wires through the tree was not the proximate cause of plaintiff's jury. Elliott v. Allegheny Co. L. Co., 54 Atl. 278; Geroski v. Same, 247 Pa. 304, 93 Atl. 338; Williams v. Springfield Gas and El. Co., 187 S. W. 556. (3) The court erred in giving plaintiff's instruction I. We think this instruction erroneous for several reasons. In the first place, it is clear outside the allegations of the petition, in submitting to the jury to find that "said

tree, considering the size and location was an object likely to attract children. In the next place, there is no testimony upon which to base such an instruction. We deem it unnecessary to do more than again point out the fact that his tree was an ordinary tree, about one foot in diameter, with the lowest limbs considerably above the height of a man's head. There was nothing about the tree to attract a child, and he was attracted only by the fact that he thought there were birds in it, which fact might attract him to any kind or character of tree. The instruction is therefore erroneous for submitting hypotheses of fact not supported by the evidence. Again, the instruction is erroneous because it submits to the jury to find that the plaintiff "climbed on and up into said tree not knowing that said wires were dangerous." The instruction is erroneous, furthermore, in the fact that it is an instruction attempting to cover the whole case, and it fails to submit to the jury to find that the maintenance of the wires through the tree was the proximate cause of plaintiff's injury. Williams v. Springfield Gas, etc. Co., supra. (4) The court erred in refusing defendant's instruction "A." Williams v. Springfield Gas. Etc. Co., supra; Elliott v. Allegheny Co., supra; Geroski v. Same, supra. (5) The court erred in refusing defendant's instruction "B." See authorities cited under point IV, supra. (6) The court erred in refusing defendant's instruction "C." This instruction told the jury that if they found that plaintiff climbed the tree in an attempt to catch or take in his possession a wild bird, or the young thereof, then he was engaged in an unlawful act under the laws of Missouri, and if they found that such attempt to commit such unlawful act contributed in any way to produce plaintiff's injury, they should return a verdict for the defendant. Fristoe v. Bodecker, 194 Ill. App. 52. (8) The court erred in refusing defendant's instruction "D" and in permitting counsel to argue to the jury that defendant should have cut the limbs from the tree and that it had a right to do so. In operating an electric light plant defendant had no right to cut or trim the tree in question,

which was the property of the abutting owner. Remhoff v. Springfield Gas etc. Co., 177 Mo. App. 417.

*A. M. Ott, Alf. F. Rector* and *William S. Flournoy* for respondent.

(1) Those who use the highly dangerous power of electricity, for any purpose, particularly for gain, are charged with the highest degree of care, to prevent injury to others. When appellant placed its wires, carrying twenty-three hundred volts of electricity and uninsulated, thru the branches of the tree in question, it knew that anyone getting into the tree for any purpose, or anyone touching the tree when it was wet from rain or snow, would be in deadly peril, and hence it was grossly lacking in that carefulness required of it by law. Myers v. City of Independence, 189 S. W. 816; Geesman v. Missouri Edison El. Co., 173 Mo. 654; Ryan v. St. Louis Transit Co., 190 Mo. 621; Day v. Light, Power & Ice Co., 136 Mo. App. 244; Brooker v. Railroad Co., 144 Mo. App. 273; Goodwin v. Tel. Co., 157 Mo. App. 796; Freeman v. Tel. Co., 160 Mo. App. 271; Keith v. Payne, 150 N. Y. S. 37; Kelly v. Higginsville, 185 Mo. App. 54; Williams v. Fulton, 177 Mo. App. 177; Brooks v. Consolidated Gas Co., 70 N. J. 211; The Commonwealth El. Co. v. Melville, 210 Ill. 70; Daltry v. Medea El. Light, Heat & Power Co., 208 Pa. 403; Ragan v. Durham Traction Co., 86 S. E. 101; Sweetin v. Pac. Power & Light Co., 153 Pac. 1054; Wade v. Empire District El. Co., 147 Pac. 63; Goodwin v. Tel. Co., 157 Mo. App. 596; Williams v. Springfield Gas & El. Co., 187 S. W. 556. (2) Under the law, appellant was conclusively presumed to know that boys climb certain kind of trees. Consequently when the petition in this case described the tree in question, its location and the condition of appellant's wires, the allegations as to negligence in that particular were sufficient. Benton v. N. C. Pub. Service Co., 165 N. C. 354, 81 S. E. 448; Temple v. McComb City El. Light & Power Co., 89 Miss. 1; Spingler v. Williams 67 Miss. 1; Mullen v. Wilks Barre G. & E. Co., 229 Pa. 54; Davenport v. King El. Co.,

242 Mo. 111, l. c. 124; Philbin v. Marlborough El. Co., 218 Mass. 394; Lynchburg Tel. Co. v. Booker, 103 Va. 594; Williams v. Springfield Gas & El. Co., 187 S. W. 556; Buckner v. Horse & Mule Co., 221 Mo. 700; Kruise v. Grand Rapids G. H. & M. R. R. Co., 155 N. W. 742; Curtis on the "Law of Electricity," page 772, sec. 512. (3) We think the petition sufficiently specifies the negligence proven, but even if it should be determined that its allegations are only general, still it would be sufficient. Lemoy v. Mo. Pac. R. R. Co., 105 Mo. 363; Conrad v. De Montcourt, 138 Mo. 312; Deiter v. Zbaren, 81 Mo. App. 612; Sommers v. St. Louis Traction Co., 108 Mo. App. 319. (4) The question of the negligence of the boy was properly submitted to the jury by the instructions. Moeller v. United R. R., 242 Mo. 721.

ALLEN, J.—Plaintiff, a minor sues by his guardian (his father) for personal injuries sustained by reason of coming in contact with an uninsulated electric light wire of the defendant city. The suit was instituted in the circuit court of Saline county, but on change of venue it went to the circuit court of Audrain county, where a trial, before the court and a jury, resulted in a verdict and judgment for plaintiff in the sum of $3500.00 and the defendant appealed.

The amended petition upon which the cause was tried, after making certain formal allegations, avers that on June 17, 1911, and for a long time prior thereto, defendant, a city of the fourth class, owned and operated an electric lighting plant, by which it lighted its streets and furnished electricity to consumers, distributing the electric current over wires strung by it along its streets on poles and trees; that on one of its streets—Walnut street—defendant had strung two such wires, carrying an electric current of a high and dangerous voltage, and that at a certain designated point on this street "said two wires were by defendant negligently strung through the lower branches of a small tree; one of said wires being negligently attached to said tree about sixteen feet from the ground and the other wire being negligently swung loose through said branches about

the same distance from the ground; both of said wires being thus negligently placed by defendant where they might injure persons, particularly children, who might get into said tree not knowing the danger from said wires.'' It is averred that when these two wires were strung along the street mentioned, they were covered with some kind of insulation, ''sufficient to protect them from the weather, but not sufficient to protect anyone coming in contact with said wires from receiving a shock from the electricity carried by said wires, and on said 17th day of June, 1911, the insulation was worn off of both of said wires where they passed through said branches of said tree and had been off of them for a long time prior thereto; . . . that said wires, as originally placed in said tree and particularly with the said insulation off of them, were highly dangerous to persons who might come in contact with them or said tree, and the defendant either knew of said dangerous conditions of said wires, or, by the exercise of ordinary care, could have known of such condition, a sufficient length of time prior to said date to have had a reasonable time, by the exercise of ordinary care, to have remedied or repaired the same prior to said date.''

The petition further avers that on June 17, 1911, plaintiff, then a child under eight years of age, residing with his parents in defendant city, was attracted to the tree mentioned, ''by the knowledge of a bird's nest being in said tree, and not knowing the danger from said wires, climbed into said tree for the purpose of examining said bird's nest, and when in said tree his person came in contact with said electric light wires, which, at that time, were carrying more than two thousand volts of electricity, and the said current of electricity was thereby discharged into plaintiff's body,'' whereby he was seriously and permanently injured, etc.

A demurrer interposed by defendant to this petition having been overruled, defendant answered, admitting, among other things, that defendant owned and operated the electric lighting plant and wires referred to in the petition; that two of its wires, carrying a very

high voltage, were strung along that portion of the street in defendant's city mentioned in the petition; that these wires "were covered with some kind of insulation sufficient to protect them from the weather but not sufficient to protect anyone coming in contact with said wires from receiving a shock of electricity carried by said wires;" and that the wires were carrying more than two thousand volts of electricity. The answer then denies generally the other allegations of the petition; avers that the wires mentioned in the petition "were not susceptible to insulation which would prevent anyone coming in contact. with them from being shocked, and that no such insulation wire could be had;" and pleads that plaintiff was injured "by reason of his own negligence and unlawful acts, directly contributing to produce his injury, in this to-wit: that plaintiff climbed a certain tree for the purpose of catching a wild bird or game bird or taking or needlessly destroying the nest or. the eggs of a wild bird or game bird, and while unlawfully in said tree, upon no lawful business or pleasure, he negligently came in contact with the aforesaid electric light wires."

The reply denies the new matter of the answer.

The evidence discloses that the tree mentioned in the petition was a small tree, or of medium size, the trunk being about ten or twelve inches in diameter. The upper branches thereof had previously been trimmed and it was referred to as a "bushy" tree. The height of its lower branches appears only by inference from the testimony that plaintiff's father was able, by "jumping up" or making "a little hop," to grasp one of the lower limbs and thus climb into the tree. One witness said that it was an elm or a maple, another thought that it was an elm. It stood about six inches from the sidewalk on Walnut street, about one hundred and fifty feet from the house in which plaintiff lived with his father and mother on an intersecting street.

On June 17, 1911, plaintiff, being then about eight years of age, was passing this tree with his younger brother, when, according to his testimony, a boy told

him of having seen some pigeon eggs under the tree. It seems that he thereupon looked among the branches of the tree and discovered a bird's nest, and then climed the tree, his brother giving him a "boost." He testified that the tree was easy to climb, and that he got above the electric light wire which afterwards injured him, and saw some young birds in the nest. He said: "I sat looking at them, didn't have any intention of taking them. . . . Then the limb busted and let me straddle of it. Upon being asked whether he saw the wires, or knew that they were there, before climbing the tree he said: "Some telephone men had been working and I saw the wire and thought they were telephone wires and I had been working there; they didn't give me a shock so thought they were telephone wires. So the limb busted and let me straddle of the wire." He further testified that the calf of his left leg first came in contact with one of the wires, which burned him severely, and that he was unable to free himself therefrom; that he grasped a limb of the tree and tried to pull himself from the wires but was unable to do so, though he later fell from the tree while his father was attempting to rescue him.

It appears that plaintiff's screams attracted the attention of his father, a railway conductor, then at home, who ran to the tree and, by jumping, grasped the lower branches thereof and thus climbed to a point near plaintiff and undertook to release the latter from the wire; but upon grasping his son's foot, the father received a severe shock and was unable to accomplish his purpose. He thereupon descended and was undertaking to rescue his son by the use of a board or plank, when the boy fell from the tree.

The evidence shows that the muscles of plaintiff's left leg between the knee and ankle, were very badly burned, as was also his right foot, the small toe of this foot having been burned entirely off; and that his left hand was also burned. It is clear that plaintiff's injuries were of a very serious and painful nature, and to some extent, at least, permanent. For obvious reasons it is

not suggested that the verdict is excessive, and hence we need not dwell further upon the testimony relating to the extent of the injuries.

The evidence shows that the wire with which plaintiff came in contact extended through the tree at a distance of about sixteen feet from the ground; that it originally had a covering, but that this had been worn off "until there was only a piece now and then on the wire." It is said that the wire was entirely bare at and about the point where plaintiff came in contact with it. One witness testified that he saw the tree "on fire once in a while," from these wires; that this happened "every time it rained." The wires carried an electric current of twenty-three hundred volts.

Defendant's counsel admitted at the trial that the wires "were dangerous when they were put there and never had insulation enough on them to protect anybody from shock if they touched them." Defendant adduced testimony of experts tending to show that the covering upon the wires was a mere weather-proofing, or "weather protector," and not designed to prevent injury to persons who might come in contact therewith. And there was testimony in defendant's behalf to the effect that it is impossible to effectively insulate wires carrying such voltage, without making the insulation so heavy as to make it impracticable to string the wires above ground. One of defendant's witnesses, however, testified that the original covering upon these wires was intended, in part, to protect against "short circuits," and prevent the wires from burning each other should they come in contact. And though his testimony appears to be somewhat contradictory, he said that if this covering had been on the wire at the time of the accident it would not have burned plaintiff's leg.

It is contended that the court erred in refusing to peremptorily direct a verdict for defendant. And in this connection it is argued that the petition is fatally defective; that it charges no facts constituting negligence on the part of defendant, in "that it neither alleges that defendant knew or should have known that children

would climb into the tree, but simply counts on the maintenance of the wires through the tree as negligence.'' We think that this contention is without merit. The petition may not be entirely free from criticism, when examined in the light of the rules of good pleading, but we regard it as altogether clear that it states a cause of action, and that it is at least sufficient, after verdict, to sustain a judgment in plaintiff's favor. Though it does not in terms aver that the tree was one to which small boys in the community would be attracted, and which they would be likely to climb, it does aver that the tree was a small tree standing in the street, in front of a certain residence, and that defendant's wires were negligently strung through the lower branches thereof ''where they might injure persons, particularly children who might get into said tree;'' and that the wires, ''as originally placed in said tree, and particularly with said insulation off of same, were highly dangerous to persons who might come in contact with them, or said tree, and the defendant either knew of said dangerous condition of said wires, or, by the exercise of ordinary care, could have known of such condition,'' etc. As to the attack made upon the petition we think it sufficient—for our purposes and as the case reaches us, at least,—that the petition avers that the tree was a small tree standing in the street, where children may be expected to play. Defendant is charged with having strung its wires through the tree, which implies that defendant, its officers and agents, knew of the character and location thereof; and, having such knowledge, knew, or ought to have known and reckoned with the fact that boys, following their natural, youthful instincts and impulses, are quite likely to climb small trees. [See Williams v. Springfield Gas & Electric Company, (Mo. App.) 187 S. W. 556; Mullen v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54.]

That the evidence sufficed to make the case one for the jury, we think cannot be well doubted. It is conceded that under the established rule of decision it was the duty of defendant to use the highest degree of care to

197 M. A.—17

prevent injury by its electric wires "whenever it might be reasonably anticipated that persons might come in contact with them." But it is contended, (1) that nothing was shown to make it appear that defendant could reasonably have anticipated that a boy would climb this tree and be injured by coming in contact with the wires, and (2) that in any event, the breaking of the limb upon which the boy was seated, and not the negligence of defendant with respect to the maintenance of the wires through the tree, was the proximate cause of the injury. As to the first of these contentions, we need not repeat what we have said above in passing upon the sufficiency of the petition. There is definite testimony, however, that the tree was one easy to climb, and that the lower branches thereof were almost within reach of plaintiff's father. It was consequently a tree such as boys may be expected to climb. As to the duty of one maintaining wires, charged with a deadly current of electricity, through such a tree in the street, we quote from the opinion of STURGIS, J., in Williams v. Springfield Gas & Electric Co., supra, as follows:

"Several cases are cited by plaintiff, and we think that such declare the law correctly, that electric companies stringing high power wires along streets and alleys through or in close proximity to trees of such character and location that boys, following their natural adventure some tendency, are apt to climb same, must use the high care imposed on them to keep such wires in a safe condition. The high degree of care required of persons handling so dangerous an agency as electricity applies, we think, to the question of anticipating that children, and especially boys, are likely to indulge in the sport of climbing trees and going into somewhat dangerous and unusual places.

"Curtis' Law of Electricity, section 512, states the law thus:

" 'An electric company, maintaining a dangerous wire through or near a tree, is bound to anticipate that persons may lawfully climb the tree, and it

is required to exercise due care to prevent injury to such persons from its wire. . . . The courts recognize that children are apt to climb trees, and impose upon electric companies the burden of using due care to keep their high-tension wires insulated in places where children when climbing a tree will come in contact with them.'

"The cases cited there and by the plaintiff fully sustain this proposition. [Mullen v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54, 77 Atl. 1108; Benton v. North Carolina Public Service Co., 165 N. C. 354, 81 S. E. 448; Philbin v. Marlborough Electric Co., 218 Mass. 394, 105 N. E. 893; Temple v. McComb City Elec. Light & Power Co., 89 Miss. 1, 42 South. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924.] This last case is the leading case on the question, and the doctrine stated has received the approval of the authors of the able notes to this case of 10 Ann. Cas. 924, and 11 L. R. A. (N. S.) 449, where such doctrine is fully discussed and the cases reviewed."

This statement of the law is, we think, at any rate, none too favorable to plaintiff, when applied to the facts of this case. In that case, however, the boy did not climb the tree, but attempted to pass into the upper part thereof from the top of the roof of a nearby building in process of construction, fell and came in contact with the defendant's wires. In view of these circumstances a majority of the court held that no recovery could be had. ROBERTSON, J., however, dissented as to this, and at his request the cause was certified to the Supreme Court, where it is now pending.

In this connection appellant has cited a number of cases to which we need not refer. Nearly all of them involve facts so far different from those here present as to make them inapplicable, in our opinion; and in so far as any of them may be said to conflict with the rule stated above, we are unwilling to follow them.

This brings us to the contention that defendant's negligence was not the proximate cause of the injury. In support of this contention appellant strongly re-

lies upon the majority opinion in the Williams case, supra, and upon Elliot v. Allegheny Co. L. Co., 204 Pa. 568, and Geroski v. Allegheny Co. L. Co., 247 Pa. 304.

It is unnecessary for us to express an opinion as to the correctness of the result reached by the majority of the court in the Williams case. In view of the facts here involved that ruling is not persuasive. Indeed in the majority opinion it is said: "If . . . plaintiff had, in a manner natural for a boy of his age, and therefore one to be anticipated, climbed this tree or passed from the house to the tree, and in so doing came in contact with defendant's dangerous wires, we would affirm his right to recover for his injuries."

In Elliot v. Allegheny Co. L. Co., supra, the plaintiff, a painter, fell from a ladder, and, in falling, grasped an uninsulated electric light wire. It was held that the fall from the ladder was the proximate cause of the injury. In Geroski v. Allegheny Co. L. Co., supra, the plaintiff, in attempting to raise a flag upon a pole by means of a wire, stepped backward so as to bring this wire in contact with an uninsulated electric wire of defendant. This was held to be a casualty which defendant could not reasonably have anticipated. Nothing in either of these cases has caused us to doubt plaintiff's right to recover in this action. The argument that the breaking of the limb was the proximate cause of the accident we regard as unsound. The injury appears to have been the natural and probable consequence of the negligent act of defendant in maintaining uninsulated and highly dangerous wires through this tree, and is therefore properly referable thereto as being the proximate cause thereof. It is not essential that defendant could reasonably have anticipated that the very injury would occur, or that it would happen in the precise manner in which it did happen. It is sufficient if the circumstances are such that defendant ought to have anticipated that some injury would be likely to result from its negligence, that plaintiff's

injury did result therefrom, and that it appears to be a natural and probable consequence thereof. And it is well settled in this State that a defendant may be held liable even if the casualty was not caused by his sole negligence, but by his negligence concurring with that of another or with an act of God or an "inanimate cause;" the negligence of defendant being "a part of the direct and proximate cause of the injury," and without which it would not have happened. [See Harrison v. Kansas City Elec. Light Co., 195 Mo. 606, 93 S. W. 951; Buckner v. Horse & Mule Co., 221 Mo. 700, 120 S. W. 766.]

We think that the demurrer was well ruled.

An instruction given for plaintiff is assailed. It authorized the jury to find that "said tree, considering its size and location was an object likely to attract children, and that said children might climb on and up into said tree," and that "defendant knew, or by the exercise of ordinary care on its part could have known, that children might be attracted to said tree and climb on and up into said tree." It is argued that in this respect the instruction is beyond both the pleading and the evidence; but from what we have said above it must be apparent, we think, that this contention has no merit. The instruction is otherwise criticised, but it is quite clear that it is not in any event fatally defective.

The errors assigned to the action of the court in refusing certain instructions offered by defendant are disposed of by what we have said above, in so far as they would warrant discussion.

It is said that the court erred in permitting plaintiff's counsel to argue to the jury that defendant, in stringing its wires, ought to have cut the limbs from the tree, and that defendant had the right to do so. But an examination of the abstract reveals that upon defendant's objection to the remark of plaintiff's counsel in question the court told plaintiff's counsel to confine his argument to the facts disclosed by the evidence.

Ne request was made to rebuke plaintiff's counsel, and no exception was saved.

We find no reversible error in the record, and the judgment is therefore affirmed. *Reynolds, P. J.,* and *Becker, J.,* concur.