## WISE *v.* SOUTHERN INDIANA GAS & ELECTRIC COMPANY

[No. 16,544. Filed June 24, 1941. Rehearing denied October 23, 1941. Transfer denied November 27, 1941.]

682

*McDonald & McDonald,* of Princeton, and *John H. Jennings,* of Evansville, for appellant.

*Sanford Trippett,* of Princeton, and *Frederick P. Bamberger* and *Edmund F. Ortmeyer,* both of Evansville, for appellee.

STEVENSON, J.—The appellant brought this action in damages to recover for personal injuries alleged to have been sustained by him as a result of his coming in contact with an uninsulated electric wire, the property of the appellee.

The complaint was in one paragraph, and alleged generally that the appellee was a public utility corporation engaged in the distribution and sale of electric current to citizens in southern Indiana, including the city of Evansville. The complaint alleged that the appellee maintained a large number of poles and electric wires on and over the streets of the city of Evansville and on Maryland street in said city. The complaint alleged that on Maryland street, in the city of Evansville, there is a public bridge which extends over and across Pigeon Creek, which bridge is constructed of steel girders and beams, and is approximately forty feet wide and two hundred feet long, with an overhead framework extending eighteen feet above the surface of the highway. The complaint charges that a great

many children residing in the general neighborhood and vicinity of this bridge have been accustomed to congregate and play on and about said bridge, and that the superstructure of said bridge can be easily climbed by children, and by reason of this fact has been attractive to children, who play and walk the superstructure thereof. The complaint charges that the appellee has had knowledge of all these facts.

The appellant further alleged in his complaint that on the 25th of June, 1937, the appellee maintained heavily charged electric wires, carrying 12,500 volts of electric energy above said bridge, and negligently and carelessly permitted said wires to sag immediately over the superstructure of this bridge, to the extent that any person upon the top of said superstructure could easily come in contact therewith.

The appellant further says that on said day, he was approximately sixteen years of age, but alleges that, by reason of his early environment, training and education, he had only the mentality of a normal child of twelve years of age; that he did not know or appreciate the fact that the wires of the appellee might be in close proximity to the top of the superstructure of said bridge, and did not know that there might be danger to him in coming in contact therewith. The appellant alleges that while playing on said bridge on the day in question, he came in contact with this sagging electric wire which was wholly uninsulated; and as a result of such contact, he was severely shocked and burned, which injuries caused excruciating pain and have resulted in permanent injury.

The complaint closes with a prayer for damages in the sum of $80,000.00. To this complaint, a demurrer was addressed, challenging the sufficiency of facts stated to constitute a cause of action. The court sustained the

demurrer to this complaint, to which ruling the appellant excepted.

The appellant refused to plead further and the court rendered judgment against the appellant, and that he take nothing by reason of his complaint. The appellant has appealed from this ruling, and the only error assigned on appeal is the alleged error in sustaining the demurrer to the appellant's complaint. The question, therefore, presented for our consideration, is the sufficiency of the facts stated to constitute a cause of action.

It will be noted that the complaint charges that for many years prior to the happening of the accident "a great many children residing in the general neighborhood and vicinity of said bridge have been wont and accustomed to congregate and play on and about said bridge." The complaint further alleges that these children were in the habit and custom of climbing to the top of the girder and walking thereon; "all of which facts were to the defendant (appellee) herein well-known."

The complaint further charges that the wire of the appellee had been negligently permitted to sag so that it was impossible to walk the top girder of the bridge without coming in contact therewith, and that said wire was wholly uninsulated.

Under these facts, our attention is called to § 20-304, Burns' 1933. In so far as it applies in this case, this statute is as follows:

> "It is hereby made the duty of all owners, contractors, subcontractors, corporations, agents or persons whatsoever engaged in . . . the transmission, generation or use of any electricity or other power . . . to see and to require that all . . . wires . . . all contrivances, and everything whatsoever used therein, are carefully selected, inspected and tested, so as to detect and

exclude defects and dangerous conditions, and that all . . . contrivances used are amply, adequately and properly constructed, . . . and that they are properly and safely used, operated, handled and maintained, . . . and that in the transmission and use of electricity of a dangerous voltage, full and complete insulation shall be provided at all points where the public . . . are liable to come into contact with the wire or wires, . . ."

While this duty to properly insulate wires carrying a high voltage of electricity, in places where the public is liable to come in contact therewith, is imposed by statute in this state, it is a rule of law generally that:

"A company which maintains electric wires in a street or other public place, uninsulated at a point where it has reason to anticipate that children may come into contact with them, or which permits wires to be broken down or crossed so as to be dangerous when within reach of children will, as a rule, be held liable for injury caused to children by such wires. This rule is uniformly true if the current is within reach of children passing along or playing upon the highway or any public place." 18 Am. Jur. 464.

The appellee contends, however, that this duty does not exist as to wires stretched above the superstructure of a bridge on which children or the general public have no right to be. The appellee contends that the appellant, at the time of his injury, was a trespasser upon the superstructure of this bridge, and hence the appellee owed him no duty, except to refrain from willfully injuring him.

While there may be no justification or excuse for the conduct of children who were accustomed to play upon and climb the superstructure of this bridge, yet this fact alone does not relieve the appellee from all liability with regard to their safety. This is

particularly true where children of tender years are exposed. As was said by our court in the case of *Drew* v. *Lett* (1932), 95 Ind. App. 89, 96, 182 N. E. 547.

> " 'It is a well recognized doctrine that persons are required to use greater care in dealing with children of tender years than with older persons who have reached the age of discretion, and that greater care is required to avoid injury to them *even when they are trespassers.*' "

Neither does the fact that the appellee did not own or have any control of the bridge on which the appellant climbed operate to relieve the appellee from all duty to properly insulate its wires. In the case of *Stedwell* v. *City of Chicago* (1921), 297 Ill. 486, 489, 130 N. E. 729, 731, 17 A. L. R. 829, 832, the injured boy had climbed the latticed pillar of the elevated railroad where he came in contact with the uninsulated wire of the appellee. In holding the appellee liable for this injury, the court said:

> "If the pillar, constructed as it was, presented an attraction and allurement to children to climb it in their play and they did so use it in their childish sports, and plaintiff in error placed the dangerous wire in such close proximity to it that in its play a child might come in contact with the wire and be injured, the fact that the plaintiff in error did not construct or own the pillar would not, itself, relieve it from liability. Where an attractive thing is so located that in yielding to its allurement a child is brought in direct contact with a danger placed there by someone else, the person responsible for creating the dangerous condition will be liable."

A similar rule of law was announced in the case of *Parsons* v. *Appalachian Electric Power Co.* (1934), 115 W. Va. 450, 454, 176 S. E. 862, 864, 100 A. L. R. 615, 619. In this case, an 11 year old boy had climbed the superstructure of a bridge and contacted an electric wire and was injured. The court said:

". . . since the electric company in this case was chargeable with knowledge that children were likely to play or climb into the superstructure of the bridge, it must anticipate that they would come there, and must exercise a high decree of care to prevent them from being injured by the current carried in its wires. In this case, the dangerous wire was within 26 inches of a place that an active boy might climb. At other points, it was as close as 17 inches. Either distance is little more than a child's arm length. While it is shown that, for the voltage carried, insulation could not be provided that would furnish protection on contact, it at the same time appears conclusively that appropriate means could have been adopted to carry the wires far enough from the superstructure to keep persons who were there from coming in contact with them. We think it was the duty of the company to adopt these means, and that its failure to do so under the circumstances constitutes negligence."

In the case of *Electric-Light Co.* v. *Healy* (1902), 65 Kan. 798, 800, 70 P. 884, 885, a ten year old boy had climbed over a railing of a bridge and came in contact with the appellant's electric wire and was killed. The court said:

"As to the boy, who was not at the time on the highway proper, but who was engaged in a dangerous sport immediately outside of it, was the company negligent in maintaining its wires in an uninsulated condition where he was liable to come in contact with them? To our minds there can be no doubt as to the answer. It was liable. To an adult it might not have been. To a small boy in the buoyancy of sport, and lacking the intelligence and discretion of older years, it was liable, in view of the fact that it knew that children of his class were in the habit of venturing in dangerous proximity to its negligently kept wires.

"The place where the boy met his death was one of those denominated in the books 'attractive nuisances,' the keepers of which, according to those decisions which we regard as the sounder exposi-

tion of the law, are liable to one who, without inculpating fault on his part, is injured thereby . . . it may be that its wires were not themselves attractive playthings for the boys, but it maintained them in such immediate proximity to that which was attractive as to constitute them an integral part of the whole."

In the case of *New York, N. H. & H. R. Co.* v. *Fruchter* (1921), 271 F. 419, 422, wires carrying a high voltage of electricity had been placed above the superstructure of a bridge; and the appellee, an eight year old boy, had climbed the superstructure of this bridge to get a pigeon's nest. While reaching for the pigeon, he came in contact with the appellant's wires and received an electric shock. Children in the neighborhood had been accustomed to climbing and playing upon the bridge girders. In affirming a judgment against the appellant, the court said:

"That it was dangerous was too obvious for argument, and therefore if the danger was known, and the temptation to children also known, and known to the defendant, it was a question for the jury to declare whether the absence of guards either human or mechanical did not constitute negligence."

It would seem, therefore, from the authorities above cited, that both the statute in this state and the common law imposed a duty upon the appellee to take such steps as were consistent with reasonable care to protect children who were *non sui juris* from coming in contact with its high voltage wires, located in places where it knew or ought reasonably to have anticipated that children of tender years might come in contact therewith. This rule has been recognized and adopted by this court, and by courts in other jurisdictions in "tree cases" where high voltage wires are located in or near trees, which children are accustomed to climb. *Fort Wayne, etc., Traction Co.* v.

*Stark* (1921), 74 Ind. App. 669, 127 N. E. 460; *Chickering* v. *Power Co.* (1919), 118 Me. 414, 108 A. 460; *Temple* v. *Electric Light, Etc., Co.* (1906), 89 Miss. 1, 11 L. R. A. (N. S.) 449, 42 So. 874; *Thompson* v. *City of Slater* (1917), 197 Mo. App. 247, 193 S. W. 971; *Benton* v. *Public Service Corporation* (1914), 165 N. C. 354, 81 S. E. 448; *Wolf, Admr.* v. *Ford, Recr.* (1917), 7 Ohio App. 461. See also Annotations in 17 A. L. R. 833, 49 A. L. R. 1053, 100 A. L. R. 621.

A similar liability has been imposed against those maintaining high voltage wires on poles which were equipped with spikes to facilitate ease in climbing, and located in places where children of tender years were accustomed to congregate and play. For cases of this character see: *Brown* v. *Southern California Edison Co.* (1932), 120 Cal. App. 102, 7 P. (2d) 770; *Afton Elec. Co.* v. *Harrison* (1936), 49 Wyo. 367, 54 P. (2d) 540.

The appellee contends, however, that the appellant on the occasion in question was on the top of this bridge in a place where he had no right to be, and was therefore a trespasser to whom the appellee owed no duty, except to refrain from willfully injuring him. The appellee calls our attention to the case of *Kent* v. *Interstate Public Service Co.* (1933), 97 Ind. App. 13, 168 N. E. 465, wherein language is used by this court which apparently supports the appellee's contention. We agree with the appellee in his contention that the appellant, when he left the traveled portion of the highway and climbed the superstructure of the bridge, was in a place where he had no right to be. The unauthorized use of a public highway for purposes other than travel or transportation may constitute a technical trespass. Yet such trespass, if any, was a wrong against some third person and not the

appellee herein. The appellant was not trespassing upon any property belonging to the appellee, and his act therefore wrongfully invaded none of the appellee's rights. This question was before the court in the case of *Dillon* v. *Twin State Gas & Electric Co.* (1932), 85 N. H. 449, 456, 163 A. 111, 114. In this case, boys were accustomed to climb the sloping girders of a bridge to the top thereof, where they sat and walked and from which they sometimes dived into the river. The appellee's wires were in close proximity with this girder; and the appellant's decedent, a fourteen year old boy, while sitting on this horizontal girder leaned over, lost his balance, and caught appellee's wires to save himself from falling. The wires were charged with a high voltage current and he was electrocuted. Appellee contended that it owed no duty to those who were wrongfully using the bridge. The court, in holding that the appellee could not take advantage of such wrongful conduct on the part of the decedent, said:

> " 'The object of the law being to safeguard and protect the various rights in land, it is obviously going quite far enough to limit the immunity to the one whose rights have been invaded. Nor does logic or justice require more. A trespass is an injury to the possession; and as it is only he whose possession is disturbed who can sue therefor, so it should be that he, alone, could assert the unlawful invasion when suit is brought by an injured trespasser. One should not be allowed "to defend an indefensible act" by showing that the party injured was engaged in doing something which, as to a third person, was unlawful.' "

This same contention was made in the case of *Stedwell* v. *Chicago* (1921), 297 Ill. 486, 130 N. E. 729. In discussing the right of the injured boy to be upon the pillar of the bridge, the court, on page 490, said: "In using it in his play defendant in error was not a tres-

passer as to plaintiff in error. So far as it was concerned, defendant in error was rightfully on the pillar." See also *Commonwealth Electric Co.* v. *Melville* (1904), 210 Ill. 70, 70 N. E. 1052.

While it is true that some courts have permitted the one maintaining high voltage wires to take advantage of the fact that injured children in reaching them were trespassers upon the property of a third person, and thus be relieved from liability, yet we doubt the soundness of such decisions. If the liability depends upon the duty to protect children of tender years, in places where the one maintaining such wires is chargeable with notice that children are likely to be, the question, whether or not they are trespassing upon the rights of some third party in reaching such place, becomes immaterial. The better rule seems to be that a duty rests upon those who maintain high voltage wires, in places where they have reason to believe that lives of children will be imperiled by coming in contact therewith, to exercise reasonable care to guard such wires so as to prevent injury to them. *Harris* v. *Indiana General Service Co.* (1934), 206 Ind. 351, 189 N. E. 410; *Fort Wayne, etc., Traction Co.* v. *Stark, supra*. In so far as the case of *Kent* v. *Interstate Public Service Co., supra*, announces a different rule of law, the same is hereby disapproved.

It may be noted, however, that in both the case of *Kent* v. *Interstate Public Service Co., supra*, and the case of *Brush* v. *Public Service Co. of Indiana* (1939), 106 Ind. App. 554, 21 N. E. (2d) 83, upon which the appellee relies, the injured boys were more than fourteen years of age, of normal intelligence, and chargeable in law with the exercise of reasonable care for their own safety. In both of these cases, there was a trial by jury in which the issue of contributory negli-

gence was raised; and this court considered the element of contributory negligence on the part of the injured persons in relieving the corporation from liability.

While the question of the appellant's contributory negligence, in the case at bar, may be properly submitted to a jury on the trial of this case, we cannot say, as a matter of law, in considering the demurrer to the complaint, that the complaint shows on its face that the appellant was guilty of such negligence as precludes his recovery.

For the reasons stated, it is our opinion that the facts stated in the complaint were sufficient to constitute a cause for action; and the trial court was accordingly in error in sustaining the demurrer thereto. For this error, the judgment of the trial court is reversed; and the court is directed to overrule the appellee's demurrer to the appellant's complaint.

NOTE.—Reported in 34 N. E. (2d) 975.